Fred A. GUY, et al., Plaintiffs/Respondents,

v.

The CITY OF ST. LOUIS, Defendant/Appellant.

No. 60861.

Missouri Court of Appeals, Eastern District, Division Four.

April 14, 1992.

Rehearing Denied May 12, 1992.

James J. Wilson, Julian L. Bush, St. Louis, for appellant.

Bartley, Goffstein, Bollato & Lange, Ronald C. Gladney, St. Louis, for respondent.

AHRENS, Judge.

Defendant, The City of St. Louis (City), appeals from the trial court's judgment in favor of plaintiffs, Fred A. Guy and Local 73, International Association of Fire Fighters, declaring invalid and enjoining the enforcement of a St. Louis City Charter prohibition on City employees' contributions to political committees or funds. We affirm.

Plaintiff Guy is a fire fighter, captain in the St. Louis City Fire Department, and a member of the St. Louis City classified service. Plaintiff Local 73, International Association of Fire Fighters, is a labor union representing fire fighters employed by the City; plaintiff Guy is the current president of plaintiff union. In their petition for declaratory judgment and injunctive relief, plaintiffs contended §§ 17 and 19 of Article XVIII, St. Louis City Charter: (1) are inconsistent with § 130.081.4 RSMo 1986; (2) violate the rights of free political activity and expression guaranteed by the First Amendment to the U.S. Constitution and Article I, §§ 8 and 29 of the Missouri Constitution; (3) violate plaintiffs' right to equal protection under the Fourteenth Amendment to the U.S. Constitution; and (4) are void for vagueness, in violation of the U.S. Constitution. Plaintiffs made the same allegations in their motion for summary judgment, except they abandoned their argument that the provisions violate the Missouri Constitution and the Fourteenth Amendment to the U.S. Constitution. City responded with its own motion for summary judgment, arguing generally that there remained no genuine issue of material fact and that City was entitled to judgment as a matter of law.

On August 12, 1991, the trial court declared invalid and enjoined the enforcement of Article XVIII, §§ 17 and 19, St. Louis City Charter, "[b]ecause of vagueness of the prohibitions, the Constitutional freedoms involved, the inherent widening of permissible conduct by Section 130.081.4, and the lack of on-going political conduct inherent in these areas."[1] Defendant appeals the trial court's order only with respect to § 17's prohibition against contributing to political committees or funds.

■ Appellate review of a summary judgment is equivalent to review of a court-tried or equity proceeding, and the judgment must be sustained if sustainable on any theory as a matter of law. *Roberts Fertilizer, Inc. v. Steinmeier*, 748 S.W.2d 883, 886 (Mo.App.1988). We are to first determine whether there is any genuine issue of material fact requiring trial, and, second, whether the judgment is correct as a matter of law. *Id.* Here, the case was submitted on a set of stipulated facts, and there are no remaining factual issues in dispute. We turn to a consideration of whether plaintiffs are entitled to judgment as a matter of law.

■ Article XVIII, § 17 of the St. Louis City Charter provides in relevant part:

No person in the classified service shall be under any obligation to contribute to any political fund or to render any political service, and no such person shall do so or be removed or otherwise prejudiced for refusing to do so.[2]

Section 22 of the Charter prescribes penalties for willful or negligent violations of Article XVIII's provisions.

In § 130.081.4 RSMo 1986, the Missouri Campaign Finance Disclosure Law provides:

Any prohibition to the contrary notwithstanding, no person shall be deprived of the rights, guarantees, protections or privileges accorded sections 130.011 to

---

1. The trial court held that certain other "Little Hatch Act" charter provisions constituted valid prohibitions on plaintiffs' political conduct; however, none of the prohibitions are the subject of this appeal.

2. We are not persuaded by plaintiffs' contention that § 17 does not prohibit employees' right to make voluntary political contributions.

130.026, 130.031 to 130.068, 130.072, and 130.081 by any person, corporation, entity or political subdivision.

Plaintiffs contend § 130.081.4 precludes any political subdivision from depriving any person of the rights, protections and privileges accorded elsewhere under the Campaign Finance Disclosure Law. Further, plaintiffs contend the General Assembly, through the enactment of chapter 130, intended to invalidate "Little Hatch Act" provisions such as those in dispute and establish a comprehensive mechanism whereby political contributions may be properly and legally made and reported.

City contends the right to make political contributions is accorded employees in § 130.028.1(5), a section not enumerated in § 130.081.4. City argues, therefore, that nothing in § 130.081.4 prohibits political subdivisions from discriminating against employees who make political contributions, since § 130.081.4 only forbids the deprivation of those rights accorded by the sections enumerated therein.

In our view, chapter 130 prohibits City from forbidding its fire fighters to make political contributions. Section 130.028.1(5) provides:

"Every person, labor organization, or corporation organized or existing by virtue of the laws of this state, or doing business in this state who shall:

\*      \*      \*      \*      \*      \*

(5) Discriminate or threaten to discriminate against any member or employee in this state for contributing or refusing to contribute to any candidate, political committee or separate political fund with respect to the privileges of membership or with respect to his employment and the compensation, terms, conditions or privileges related thereto shall be guilty of a misdemeanor, and upon conviction thereof be punished by a fine of not more than five thousand dollars and confinement for not more than six months, or both provided, after January 1, 1979, the viola-

tion of this section shall be a class D felony."

As used in chapter 130, the definition of "person" includes the following:

"an individual, group of individuals, corporation, partnership, committee, proprietorship, joint venture, *any department, agency, board, institution or other entity of the state or any of its political subdivisions,* union, labor organization, trade or professional or business association, association, political party or any executive committee thereof, or any other club or organization however constituted or officer or employee of such entity acting in his official capacity."

§ 130.011(18) RSMo 1986 (emphasis added).[3]

■ Chapter 130 does not define the term, "political subdivision," and the sections in dispute do not reference other definitional statutes. Absent statutory definition, words are to be given their usual, plain and ordinary meaning. *State ex rel. Ashcroft v. Union Elec. Co.,* 559 S.W.2d 216, 221 (Mo.App.1977).

Black's Law Dictionary defines "political subdivision" to mean, "[a] division of the state made by proper authorities thereof, acting within their constitutional powers, for purpose of carrying out a portion of those functions of state which by long usage and inherent necessities of government have always been regarded as public." BLACK'S LAW DICTIONARY 1159 (6th ed. 1990). Since 1875, The City of St. Louis has been authorized to collect state revenue and perform all other functions in relation to the state in the same manner as if it were a territorial subdivision of the state. *City of St. Louis v. Doss,* 807 S.W.2d 61, 62 (Mo. banc 1991) (*citing Preisler v. Hayden,* 309 S.W.2d 645 (Mo.1958)). Further, The City of St. Louis is recognized as both a city and a county. *Id.;* Mo. Const. art. VI, § 31.

In other contexts, a "political subdivision" has been defined to mean: "any

---

**3.** The definition was amended by L.1985, H.B. Nos. 150, 163 & 451, § 1, effective January 1, 1986. The amendment changed the definition

to include the language at issue here, and added the concluding phrase, "or officer or employee of such entity acting in his official capacity."

agency or unit of this state which now is, or hereafter shall be, authorized to levy taxes or empowered to cause taxes to be levied," § 70.120(3) RSMo 1986; "a county, city, town, village, or township of a township organization county," § 115.013(18) RSMo 1986; "any agency or unit of this state empowered by law to maintain a law enforcement agency," § 70.815.1(2) RSMo (Supp.1991); and "any county, city, town, village, or other political entity having the authority to tax and to exercise the power of eminent domain," § 305.120 RSMo (Supp.1991). Although we do not rely on these definitions, we find them relevant to our determination of the "usual" meaning of the term at issue. We find The City of St. Louis to be a "political subdivision" within the meaning of chapter 130.

In our opinion, § 130.028.1(5), together with the amendment to § 130.011(18) extending the definition of "person" to include a political subdivision, indicate a legislative intent to prohibit political subdivisions from discriminating against any person with respect to the activities enumerated in § 130.028.1(5).[4] Nothing in the statute indicates the legislature intended not to preempt or supersede conflicting city charter provisions. Further, although a "city which adopts or has adopted a charter for its own government ... [has] all powers which the general assembly of the state of Missouri has authority to confer upon any city," the powers must not be "limited or denied by the charter so adopted or by statute." Mo. Const. art. VI, § 19(a). The conflict between § 130.028.1(5) and article XVIII, § 17 of the St. Louis City Charter must be resolved in favor of the statute.

See Doss, 807 S.W.2d at 63. It is within the exclusive purview of the legislature to address this conflict if it intends a contrary result.[5]

■ We are mindful that the trial court found § 17 of the City charter invalid "because of the inherent widening of permissible conduct by Section 130.081.4," and not because of conflict with § 130.028.1(5). However, we will affirm a summary judgment even if we do not accept the trial court's reasoning if the judgment can, as a matter of law, be sustained on any theory. *McMullin v. Borgers*, 761 S.W.2d 718, 719 (Mo.App.1988). We will not reverse a correct result even where granted for the wrong reasons, and will sustain the trial court's entry of summary judgment even if the theory on which we dispose of this case was not presented to the court. *See Roberts*, 748 S.W.2d at 886.[6]

We limit our holding to the narrow issues before us. Due to its conflict with § 130.028.1(5), the St. Louis City Charter is unenforceable to the extent it prevents plaintiffs from making financial contributions to political committees or funds to include candidates for state, local, and federal offices.

The judgment of the trial court is affirmed.

SMITH, P.J., and KAROHL, J. concur.

---

4. We determine legislative intent from the wording of the statute. Contrary to plaintiffs' urging, we do not rely on the affidavit of Daniel J. McVey, President of the Missouri State Labor Council, which sets forth hearsay statements, allegedly made by Senator John Scott, regarding the purpose of § 130.081.4.

5. Because we find the trial court's order sustainable on the grounds of statutory preemption, we do not reach the constitutional issues presented in this case. However, we note City's persuasive argument, pursuant to a First Amendment analysis, that its restrictions on employees' political activities serve important and legitimate governmental interests. Nevertheless, the cases

on which City relies were decided prior to the effective date of chapter 130, and none involves a city charter provision preempted by conflicting state law. Although not at issue here, we further note the apparent conflict between the provisions of chapter 130 and state laws restricting the political activity of public employees. *See* § 84.830 RSMo 1986; *Pollard v. Board of Police Comm'rs*, 665 S.W.2d 333 (Mo. banc 1984).

6. As noted earlier, City concedes that § 130.028.1(5) confers the right to make contributions to political funds.