**STATE ex rel. BOARD OF HEALTH CENTER TRUSTEES OF CLAY COUNTY, Respondent,**

**v.**

**COUNTY COMMISSION OF CLAY COUNTY, et al., Appellants.**

**No. 77459.**

Supreme Court of Missouri,
En Banc.

April 25, 1995.

Tom B. Kretsinger, Jr., Liberty, for appellants.

Patricia L. Hughes, Liberty, for respondent.

THOMAS, Judge.

This case involves an appeal from a judgment and order in mandamus from the Circuit Court of Clay County ordering and directing appellants to authenticate the 1993 property tax levy on behalf of the Board of Health Center Trustees of Clay County (Board) in the amount of $.09 of $100 of assessed valuation rather than the $.07 determined by the Clay County Commission (Commission). This Court has jurisdiction because the case involves the construction of revenue laws. *Mo. Const. art. V, § 3.* We affirm the trial court's determination of tax rates and reverse the award of attorneys fees.

I.

The Clay County Health Center (Health Center) was established in 1953 after winning approval of the voters of Clay County in a special election. The Health Center is governed by a five member Board of Health Center Trustees, who are elected by the voters of Clay County, and is operated pursuant to section 205.042.[1] The statutory purpose for county health centers is for the improvement of health of all inhabitants of the county. *§ 205.050.* Funding for the Health Center was to come from a property tax levy imposed by the Board. As determined by the 1953 election, the maximum levy allowed is $.10 per $100 of assessed valuation.

Following a general statewide increase in assessed property valuations in 1985, the Hancock Amendment, article X, section 22, of the Missouri Constitution, required a tax rollback to prevent a windfall benefit to governmental taxing units. Under the state auditor's formula for determining compliance with the law, the ceiling for the levy, which remained at $.07 from 1985 through 1990, increased to $.08 in 1991, and increased to $.09 in 1992. This formula, developed by the state auditor pursuant to section 137.073.6, compared the increase in the total assessment value of property from the prior year, excluding increases related to new construction or annexations, to the change in price level for the same period. The Board voted on August 12, 1993, to increase the levy for fiscal year 1993 from $.07 to $.09 due to an increased demand for health care services. Prior to the levy for all taxing authorities in a county being placed on property tax bills by the collector of revenue, the Commission certifies the amount. After receiving the Board's $.09 levy along with its proposed budget, the Commission held a hearing on the increase. Despite no testimony for anything other than a $.09 levy, the Commission determined that it would not grant an increase and would only approve $.07.

The Board filed a petition in mandamus with the Circuit Court of Clay County to compel the Commission to authenticate the amount of the tax levy for the Health Center as determined by the Board of Health Center Trustees. Following a trial, the court issued an order and awarded attorneys fees to the Board for pursuing this matter of public interest.

II.

The Commission's first point on appeal is that the trial court's order to authenticate the $.09 1993 tax levy of the Board was not supported by evidence of voter approval of the creation of the Health Center. The Commission asserts that there is no competent evidence to support the 1953 election authorizing a one mill[2] levy for the creation of the Health Center. The Commission contends that the only evidence presented was the oral testimony of Reverend Maurice Hall, a minister involved in the petition drive and election resulting in the establishment of the Health Center, who subsequently served on

1. All statutory citations are to RSMo 1994 unless otherwise stated.

2. A "mill" is a property tax of $.10 per $100 assessed valuation.

its Board for the next twenty years. The Commission's position is that Hall's testimony should have been stricken as hearsay. The Board introduced into evidence certified copies of both the notice of the special election and the ballot. In addition, the Board asserts that the oral testimony relating to the election results was properly admitted by the trial court because the witness testified from firsthand knowledge in that he was directly involved in the creation of the Health Center. His statement is not hearsay, but it may raise a best evidence issue. However, this evidence does not involve proof of the terms or contents of a writing but rather involves proof of a fact which exists independent of a writing and is proved by a writing. As such, the best evidence rule does not apply. *Cooley v. Director of Revenue,* 896 S.W.2d 468 (Mo. banc 1995). The Commission never contends that the election did not occur or that the creation of the Health Center was not valid, thus causing the action of the Board over the past thirty-five years to be invalid, nor did it present any evidence of its own to refute the testimony of Reverend Hall stating that the election was not sufficient to validly create the Health Center.

The testimony presented was adequate to support the court's ruling on this point, and the Commission's point is denied.

III.

The Commission next contends that increasing the levy violated statutes and the Constitution of Missouri which grant discretion to the Commission to set the health levy and require the Commission to set the levy at a level sufficient to produce the necessary revenues to support the health budget. The Commission also contends that the levy increase violated the Hancock Amendment, article X, section 22, of the Missouri Constitution.

Section 205.141 states: "The county commission ... shall have the power to levy upon all property subject to its taxing powers, an annual tax in an amount not to exceed ten cents on each one hundred dollar valuation for the purpose of operating or maintaining a public county health center or institution." This section was enacted in 1958, five years after the establishment of the Health Center.

Section 205.042.8, enacted prior to the establishment of the Health Center, states: "The board of health center trustees shall determine annually the rate of the tax levy, except that rate so determined shall not exceed the maximum rate authorized by the vote of the people of the county."

The Commission contends that sections 205.141 and 205.042.8 are hopelessly conflicting and that the last statute enacted should act to repeal the first to the extent that the statutes conflict, i.e., because both statutes give the power to set the levy to different bodies, the only power to levy is in the hands of the county commission. We disagree. The statutes can be reconciled by the type of health center in operation in the county. Section 205.042 concerns counties, such as Clay, which have an independent health center that was established by a vote of the people and is governed by an independent board. This type of operation is separate from the county commission regarding budgeting and taxing issues; such entity merely submits the budgets and levies to the commission for the commission to certify and forward to the county collector for inclusion on the property tax bills. The commission's action of certifying the levy is a ministerial function not involving discretion.

The other type of health center is one that is established as a department of county government. This type of organization is completely controlled by county government in that the center has no independent autonomous control over its budget, personnel, or sources of funding. With a health department, the county controls the amount and nature of the annual budget. Funding for the budget is authorized by the county commission subject to the limits of section 205.141.

In determining which statute to apply to this case, the apparent conflict is resolved by the two different organizational structures for health services; the statute specifically dealing with a health center board of trustees, section 205.042, governs independent

health boards, such as in Clay County, while the other statute, section 205.141, applies to counties not having such an independent board of health. Section 205.042 therefore applies in this case and the Board is allowed to authorize the levy as long as it complies with the law. The Commission's reliance on the county budget law, section 50.525, et seq., is misplaced because it does not apply to independent authorities such as the Board, but rather to departments that receive the revenue from the county government. This point is denied.

The Commission also contends that an increase in the levy without voter approval violates the Hancock Amendment and the enabling legislation, section 137.037. We do not reach a decision on whether the Hancock provisions were violated because the Commission has no standing to bring such a challenge. The Commission's role for independent taxing authorities such as the Board is the ministerial duty of accumulating the levies assessed by such political subdivisions and certifying them to the collector for inclusion on the tax bills. Its role is not to act as a judge of the constitutionality of the tax. Moreover, the class of persons who can bring suit to enforce the Hancock Amendment is limited to taxpayers. *Art. X, § 23; § 137.073.8; Fort Zumwalt School District v. State,* 896 S.W.2d 918, 921 (Mo. banc 1995). The Commission has no standing in such a matter. This point is denied.

IV.

The Commission's next point is that mandamus is not the proper method for contesting the increase in the levy because the Board failed to exhaust its administrative remedies. The Commission cites section 49.230, which provides that "[a]ppeals from the decisions, findings and orders of county commissions shall be conducted under the provisions of [the Administrative Procedure Act]." As noted in section II of this opinion, however, the Commission has no power to challenge the budget and levy of the Board. Therefore, the Commission's actions were void, and no administrative appeal by the Board is necessary. Furthermore, no administrative appeal is required when the challenge is only to the tax rate. *Bartlett v. Ross,* 891 S.W.2d 114, 116 (Mo. banc 1995).

The Commission also argues that since the power to tax is legislative, it is more than a mere ministerial function, and mandamus is not proper. Such legislative actions are beyond the scope of mandamus jurisdiction of the circuit court. *Bash v. Truman,* 335 Mo. 1077, 75 S.W.2d 840 (1934). In this case, however, we determine that the function of the Commission is the ministerial duty of certifying the amount of the levy determined by the Board to the county collector, and the Commission has no independent authority to affect the outcome. Therefore, mandamus was properly used in these circumstances. While mandamus cannot be used to control the judgment or discretion of a public official, it may be used to compel the performance of mere ministerial acts or duties. *State ex rel. Lane v. Kirkpatrick,* 485 S.W.2d 62, 64 (Mo.1972). As the requirement of mandamus has been met, this point is denied.

V.

The Commission next argues that the finding of the trial court that the Board rather than the Commission has sole authority to appoint and remove all personnel of the Health Center, including the director, was incorrect. The Commission apparently wants this Court to hold that since the director of the Health Center was not appointed by the Commission he had no authority to act, and the trial court's ruling should therefore be reversed. The Commission fails to demonstrate how this warrants reversal even if true.

Additionally, section 205.042.4 grants the Board the power to "appoint and remove such personnel [of the health center] as may be necessary and fix their compensation. . . ." Moreover, one statute relied upon by the Commission, section 205.100, states merely that the county commission shall "appoint the director of the public health center as county health officer. . . ." This statute suggests that the Health Center director will be given the additional responsibility of the "county health officer" by the Commission

but provides no guidance as to how the director of the Health Center should be appointed. The other statute relied upon by the Commission, section 192.260, empowers a commission to "appoint a duly licensed qualified physician as a county health officer for a term of one year...."

The trial court correctly found that the Board had sole authority to appoint the director and all personnel of the Health Center pursuant to section 205.042.4. This section clearly establishes that the Board has complete control over such personnel matters. The two statutes relating to the appointment of a health officer for the county are not relevant to this issue. Point denied.

VI.

The next point raised by the Commission is that the Board is required to obtain the approval of the Commission with regard to certain activities pursuant to section 205.060. Section 205.060 provides:

> The board of county health center trustees shall not enter into contracts for the private practice of medicine, nor shall any of its personnel practice medicine nor dispense drugs, vaccines or serums *for personal gain*, nor shall its facilities be used for such purpose in any way except as it may be necessary and agreed upon between the board and county commission or commissions for the care of the indigent for whom the commission or commissions may be responsible, or except in furtherance of diagnostic and communicable disease control programs. [Emphasis added.]

The Commission argues that this statute requires an agreement between the Commission and the Board regarding the hiring of physicians for the care of indigents, and that the record reflects no such agreement. The Commission fails to show, however, how any potential violation of this statute could impact the level of the tax levy or who has the authority to set it. We, therefore, do not need to decide whether the requirements of this statute have been met, only that it is not relevant to this case. This point is denied.[3]

VII.

The next point of error is that section 205.042.8 violates sections 1, 2, and 15 of article X and section 7 of article VI of the Missouri Constitution. Section 205.042.8 provides: "The board of health center trustees shall determine annually the rate of the tax levy, except that the rate so determined shall not exceed the maximum rate authorized by the vote of the people of the county." Article X, section 1, of the Missouri Constitution gives the power to tax, in addition to the general assembly, to "counties and other political subdivisions under power granted to them by the general assembly for county, municipal and other corporate purposes." "Other political subdivisions" is defined in article X, section 15, as "townships, cities, towns, villages, school, road, drainage, sewer and levee districts and any other public subdivision, public corporation or public quasi-corporation having the power to tax." In other words, article X, section 1, gives the power to tax to political subdivisions which have the power to tax. Taken together, these two sections require that a political subdivision's power to tax is contingent upon a grant of authority to tax by the legislature, and section 205.042.8 is such a grant. This taxing power of the Board is therefore within the taxing powers of the constitution.[4] The Commission's point is denied.

VIII.

The trial court awarded $14,465.87 in attorneys fees and expenses to the Board as fair and reasonable expenses incurred in a successful matter undertaken in the public interest, basing its decision on *State ex rel. Lack v. Melton*, 692 S.W.2d 302, 305 (Mo. banc 1985). *Lack* can be distinguished from

3. Even if section 205.060 does require an agreement between the Commission and the Board, it is not clear that the proper remedy for addressing the violation would be to reduce the tax assessment from $.09 to $.07.

4. Article X, section 2, also cited by the Commission as a provision being violated, states: "The power to tax shall not be surrendered, suspended or contracted away, except as authorized by this constitution." Since providing authority to a political subdivision is authorized by the constitution, this section does not apply to this case.

this case in that the issue in *Lack* was whether the state could pay its own attorneys for the legal expenses incurred. The award of the trial court in the present case does not take into account the well established rule in Missouri that, absent a statutory provision or contractual agreement, with few exceptions limited to very unusual circumstances, none of which are present in this case, each litigant must bear his own attorneys fees. *David Ranken, Jr. Tech. Inst. v. Boykins*, 816 S.W.2d 189, 193 (Mo. banc 1991). As no such provision has been cited or can be located, we find that the court erred in assessing attorneys fees against the Commission. The award of attorneys fees is reversed.

IX.

Lastly, the Commission argues that the trial judge should have recused himself for bias and prejudice evidenced by comments made before trial, remarks made during the Commission's opening statement, and a smile the judge made in response to a motion to recuse. These complaints include that the judge had determined the issues prior to trial and numerous examples of ruling to prevent delay and to keep the attorneys focused on the issues of the case. A review of the record, however, indicates that the comments made by the judge did not show prejudice but rather a frustration with the difficulty involved in getting the tax bills printed on schedule. This point is denied.

X.

The judgment of the trial court is affirmed in part and reversed in part.

All concur.