Dear Ms. Montee:
You have submitted a request to this office for an opinion in response to the following question:
 Are any of these entities political subdivisions for the purpose of Section 29.230.2 RSMo: county health centers, SB 40 boards, E911 boards, community mental health centers, or senior services boards?
We understand that the purpose of your question is to determine whether these entities should be audited on a regular basis, along with other county offices, in accordance with Section 29.230.1; or only upon receipt of a petition of the voters in accordance with Section 29.230.2.
 REVIEW OF LAW
The State Auditor's statutory authority to perform audits, generally, is found in Chapter 29.[1] Section 29.230 directs the State Auditor to conduct audits in two distinct circumstances:
(1) The Auditor shall conduct audits of the various county officers in counties with unelected county auditors at least once during the county officer's term. Section 29.230.1. *Page 2 
(2) The State Auditor shall audit any political subdivision of the state when requested to do so by a petition signed by the appropriate number of voters. Section 29.230.2.
Article IV, Section 13 of the Missouri Constitution provides that the State Auditor must "establish appropriate systems of accounting for the political subdivisions of the state." But neither Article IV nor Chapter 29 defines the term "political subdivision."[2] Thus, we must resort to principles of statutory construction to find the appropriate definition for the term as used in Section 29.230. One such principle is that:
 When the legislature enacts a statute referring to a term which it does not define and which has [other] judicial or common law meaning attached to it, the legislature is presumed to have acted with knowledge of that meaning.
State v. Harris, 156 S.W.3d 817, 823 (Mo.App.W.D. 2005), citingPharmFlex, Inc. v. Div. of Employment Sec., 964 S.W.2d 825, 830 (Mo.App. W.D. 1997). However, a review of Missouri constitutional and statutory law reveals many uses of the term "political subdivision" with various meanings. The Missouri Supreme Court has acknowledged that the numerous provisions make it difficult to formulate one all-encompassing definition: in State v. Hodge, 841 S.W.2d 658, 659 (Mo. banc 1992), the Court concluded that "no universal definition of `political subdivision' exists." An entity may be a political subdivision for purposes of one law, but not for another.
As we review the law, we note initially that Article X, § 15 of the Missouri Constitution, which relates to taxation, states that:
 The term "other political subdivision," as used in this article, shall be construed to include townships, cities, towns, villages, school, road, drainage, sewer and levee districts and any other public subdivision, public corporation or public quasi-corporation having the power to tax.[3] *Page 3 
Other provisions do not specifically mention taxation. For example, Section 251.020, which relates to economic development, defines "political subdivisions" as "counties, townships, cities, towns, villages, whether or not incorporated, . . . and any other local public body created by the general assembly or exercising governmental functions."[4]
In a case involving the campaign finance disclosure law, the Missouri Court of Appeals also noted the lack of uniform definition and referred to the Black's Law Dictionary definition, which describes a "political subdivision" as:
 [a] division of the state made by proper authorities thereof, acting within their constitutional powers, for purpose of carrying out a portion of those functions of state which by long usage and inherent necessities of government have always been regarded as public.
Guy v. City of St. Louis, 829 S.W.2d 66, 68 (Mo.App.E.D. 1992), quoting
Black's Law Dictionary 1159 (6th ed. 1990). That court also noted the contextual nature of the definition:
 In other contexts, a "political subdivision" has been defined to mean: "any agency or unit of this state which now is, or hereafter shall be, authorized to levy taxes or empowered to cause taxes to be levied,"§ 70.120(3) RSMo 1986; "a county, city, town, village, or township of a township organization county,"§ 115.013(18) RSMo 1986; "any agency or unit of this state empowered by law to maintain a law enforcement agency,"§ 70.815.1(2) RSMo (Supp. 1991); and "any county, city, town, village, or other political entity having the authority to tax and to exercise the power of eminent domain,"§ 305.120 RSMo (Supp. 1991). *Page 4 
Guy v. City of St. Louis, 829 S.W.2d 66 at 68-69.
Thus, in addressing the question of whether specific county entities are subject to audit under Section 29.230.2, we must consider the context of the statute, as well as the authorities that define the term "political subdivision" under Missouri law. When we do so, we conclude that the most appropriate distinguishing characteristic of a political subdivision for the purposes of Section 29.230 is the power to tax.
We noted earlier that Article X, § 15 explicitly defines political subdivisions as those entities "having the power to tax." This provision was added to the Missouri Constitution in 1945, as was Article IV, § 13, prescribing that the State Auditor must "establish appropriate systems of accounting for the political subdivisions of the state." Section 29.230 was also amended that year by Senate Bill 311.[5]
Section 21 of that bill expanded the State Auditor's duty beyond state and county supported entities to include the broader category of "political subdivisions" for the first time.
We do not consider Article X, § 15 to be in pari materia with Article IV, § 13 and Section 29.230. "In pari materia" means "upon the same matter or subject." Black's Law Dictionary 791 (6th ed.1990). However, in keeping with the tenet that the legislature is presumed to act with knowledge of the meaning of a word in other contexts, we find it strongly suggestive that the term "political subdivision," defined in and added to Article X, § 15 in 1945, was added to Article IV, § 13 and Section 29.230
in the same year. In addition, Section 105.145, which requires political subdivisions to remit copies of their annual financial reports to the State Auditor, defines "political subdivision" as "any agency or unit of this state, except counties and school districts, which now is, or hereafter shall be, authorized to levy taxes or empowered to cause taxes to be levied." That statute, even though found in a different chapter and enacted at a different time, may be fairly considered in pari materia with § 29.230, as both relate to the State Auditor:
 Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. Norman J. Singer, Statutes and Statutory Construction section 51.03 (6th ed.2000). The doctrine of in pari materia requires that statutes relating to the same subject matter be construed together even though the statutes are found in different chapters and were enacted at different times. *Page 5 
State v. Goebel, 83 S.W.3d 639, 645 (Mo.App.E.D. 2002). See also Crumv. Mo. Dir. of Revenue, 455 F.Supp.2d 978 (W.D. Mo. 2006) (reading Sections 324.010 and 334.100 in pari materia because both relate to when and how a physician's license can be revoked, despite being enacted at different times).
Thus, we believe the single most appropriate distinguishing characteristic of a political subdivision for the purposes of Section29.230 is the power to tax, and we analyze the entities about which you inquired in light of that conclusion. However, we also note that several of the entities about which you inquired have significant fiscal and managerial autonomy, separate from their local counties. Our opinion that they are not political subdivisions for purposes of Section 29.230 should not be read to derogate that autonomy or be projected to other statutes.
 LEGAL ANALYSIS
The various county entities you have inquired about are as follows:
1. County Health Centers
County health centers are created pursuant to Sections 205.010 etseq., for the "improvement of health of all inhabitants of [the] county or counties." Section 205.050. Chapter 205 does not define county health centers as political subdivisions.
County health centers are created by a petition of voters, or by a majority vote of the county commissions in certain counties. Section205.010.[6] After the initial vote of the people for a tax on assessed valuation to support the county health center, the trustees "shall determine annually the rate of the tax levy[.]"
We have issued several opinions on county health centers in the past. In Opinion No. 224, Lehr (1975), we concluded that the State Auditor was obligated to include county hospitals in the scope of county audits under Section 29.230.1. In Opinion No. 53, Wilson (1991), we concluded that the Boone County Hospital was not a political subdivision separate from Boone County, and that the county should pay the cost of a petition audit of the hospital. In Opinion No. 83, Staples (1988), we concluded that a county health center could not independently provide for the pensioning of its officers and employees under the Missouri Local Government Employees' Retirement System (LAGERS) because it was a part of the county rather than a separate political *Page 6 
subdivision. These opinions consistently concluded that county health centers were part of the county government rather than separate political subdivisions.
However, we believe that conclusion must be revised in light of State exrel. Bd. of Health Center Trustees of Clay County v. County Comm'n ofClay County, 896 S.W.2d 627 (Mo. banc 1995). In that case, the Missouri Supreme Court discussed at some length the question of whether county health centers are political subdivisions. The issue arose when Clay County disputed the annual tax levy rate submitted by the Clay County Health Center. Id. The Court ultimately found that the Clay County Health Center had the authority to set its own tax rate. Id. at 631.
The Court noted that Section 205.141 gave the county commission the power to levy a tax to support a county health center, and Section 205.042.8 gave the board of health center trustees the power to determine the rate of the tax levy. The Court found that the two statutes applied to two different types of county health centers: those that are "established as a department of county government. . . . [and] completely controlled by county government," with no independent autonomous control over its budget, personnel, or sources of funding, and those that are "established by a vote of the people and . . . governed by an independent board." Id.
at 630. The Court described the latter type of county health center thusly:
 This type of operation is separate from the county commission regarding budgeting and taxing issues; such entity merely submits the budgets and levies to the commission for the commission to certify . . . The commission's action of certifying the levy is a ministerial function not involving discretion.
Id.
The Court further noted that the county health center's power to tax was authorized by Article X, § 15 of the Missouri Constitution. By implication, therefore, it was a political subdivision for purposes of that provision.
We believe the Court's opinion is controlling authority on the question of whether a county health center established under Section 205.042, with the power to set its own tax levy, is a political subdivision and thus governs the State Auditor's authority to audit the county health center as well. If the county health center is established and fully supported by the county government, and does not set its own tax rate, it should not be *Page 7 
considered a "political subdivision" for purposes of Section 29.230.2. But the county health centers that are established by petition and operate autonomously should be so considered, based on their independent power to levy a tax and their fiscal independence. Accordingly, we withdraw Opinion No. 224-1975 insofar as it relates to the latter type of county health center, and we withdraw Opinion No. 83-1988 and Opinion No. 53-1991 in their entirety.
2. SB 40 Boards
SB 40 boards are established in Sections 205.968 et seq., to administer sheltered workshop programs and facilities. The boards are considered "political subdivisions" only for the narrow purposes of Sections 70.600
to 70.755.[7]
SB 40 boards are created when a majority of voters approve a tax levy based on assessed valuation. Section 205.971. The Supreme Court has issued an opinion relating to SB 40 boards and the power to tax. InState ex rel. Indus. Serv. Contractors, Inc. v. County Comm'n of JohnsonCounty, 918 S.W.2d 252 (Mo. banc 1996), the Johnson County SB 40 board asserted that it had the authority to set tax levy increases, not the county commission. The Court found that although SB 40 boards do have exclusive administrative control of sheltered facilities, "it does not necessarily follow that the general assembly vested the board with the power to . . . tax." Id. at 256. Not only is the county commission given the taxing authority, "nothing in the language of the statue logically implies that [the county commission is] obligated to levy only that amount of tax the board determines is necessary." Id.
Industrial Services Contractors makes it clear that SB 40 boards do not have their own authority to tax or set a tax levy. We believe they should not be considered political subdivisions for purposes of Section29.230.2.
3. E911 Boards
E911 boards are established in Sections 190.335 et seq.[8] The boards administer a county sales tax that provides for the central dispatch of fire protection, law enforcement and ambulance services. Section 190.335.1. Chapter 190 does not identify E911 boards as "political subdivisions." *Page 8 
An E911 board is created when a ballot proposal is approved by a majority of county voters.[9] The E911 board is primarily authorized to purchase and maintain emergency equipment for centralized dispatching (Section 190.335.1) and funding for these duties comes from a retail sales tax (Section 190.335.4). Each year, the county commission[10] is required to establish the tax rate, which is not to exceed the rate approved by voters. Section 190.335.7.
In an opinion issued in 2000, we noted "[t]he power to tax for a county or a political subdivision must be based upon specific or clearly implied authority from the general assembly." Opinion No. 208-2000, Spencer, citing State ex rel. Goldberg v. Barber Sons Tobacco,Inc., 649 S.W.2d 859 (Mo. banc 1983). In the case of E911 boards, the power to tax has been specifically conveyed to the county commission.Id.
E911 boards do not have their own taxing authority. We conclude they are not "political subdivisions" subject to audit under Section 29.230.2. This conclusion would apply also to "Emergency Telephone Service 911 Boards" established pursuant to Sections 190.309 et seq., as they also lack the power to set their own tax rate.
4. Community Mental Health Centers
Community mental health centers are established in Sections 205.975et seq., and are to provide "comprehensive mental health services . . . to individuals residing in a certain service area." Section 205.975(2). Chapter 205 does not identify community mental health centers as political subdivisions.
Community mental health center boards are established through a series of steps. First, the Department of Mental Health must create mental health service areas, which may contain one or more counties. Section205.976. Second, if a county has one or more service area, it may put a community mental health center tax levy on the ballot. Section 205.977. The levy is an assessed valuation on property, to be collected along with other county funds. Section 205.980.1. Finally, if approved, the community mental health *Page 9 
center board of trustees is then appointed by the county commission or commissions in the mental health service area. Section 205.984.1.
Although the community mental health center board of trustees decides how tax levy funds shall be spent, Section 205.980.2, it does not have the power to tax or cause taxes to be levied. The board may "request" that the governing body of the county or counties submit a tax vote to the people. Section 205.979.1. The governing body of the county "shall levy and collect the tax" when it is approved. Section 205.980.1. Section 205.975(7) defines "participating counties" as those which "choose to appropriate funds from their general tax revenues or levy and collect special taxes to support" a community mental health center. There is no language similar to the grant of authority in Section205.042.8 for the county health centers, specifically conferring the right to determine the rate of their tax levy. We conclude that the power to levy the tax to support the community health center resides in the governing body of the county or counties in the service area.
In Opinion No. 41-1980, Lampo, we opined that a community mental health center board of trustees does not have the power to issue tax anticipation notes or hold title to real property. However, third class county courts may do both on behalf of community mental health centers in those counties. Id. This opinion is consistent with the absence of a statutory grant of taxing authority to the community mental health center board. We conclude that community mental health centers are not "political subdivisions" for purposes of Section 29.230.2.
5. Senior Services Boards
Senior services boards are established in Sections 67.990 et seq., "to provide programs which will improve the health, nutrition and quality of life of persons who are sixty years of age or older." Section 67.993.3. While nothing in Chapter 67 specifically defines senior services boards as "political subdivisions," Chapter 67 is entitled "Political Subdivisions, Miscellaneous Powers."
A senior services board of directors is created first with the approval of a senior citizens' services fund tax, based on assessed valuation. Section 67.990.1. The senior services board does not have clear taxing power; to infer so would be to assume an authority that the legislature did not necessarily confer. See Opinion No. 208-2000, Spencer. We find that senior services boards are not "political subdivisions" within the meaning of Section 29.230.2, and are therefore not subject to audit under that subsection. *Page 10 
 CONCLUSION
A county health center, if it is established pursuant to Section205.042 and has the authority to set its own tax levy, is a "political subdivision" and would therefore be subject to a state audit when requested by petition pursuant to Section 29.230.2. Other county health centers, SB 40 boards, E911 boards, community mental health centers, and senior services boards, however, do not meet the characteristics of "political subdivisions" for purposes of that statute.
 Sincerely,
 ____________________________ JEREMIAH W. (JAY) NIXON Attorney General
[1] All statutory citations are to RSMo 2000 unless otherwise specified.
[2] The one reported case construing the term for purposes of Section29.230, Consol. School Dist. No. 1 of Jackson County v. Bond, 500 S.W.2d 18
(Mo.App. K.C.D. 1973), decided that a school district was a political subdivision for purposes of the statute, but did not otherwise discuss the characteristics of a political subdivision.
[3] For other provisions relating to taxation, see also, Section70.120(3) (defining "political subdivision" for purposes of municipal contracts); Section 105.145.1(2) (requiring political subdivisions to make annual reports to the state auditor); and Section 70.600(19) (including in the definition of "political subdivision": (1) government subdivisions that have the power to tax, except for school districts; (2) certain boards of utilities and public works; (3) joint municipal utility commissions).
[4] For other provisions that do not relate to taxation, see also, Section 44.010 (defining political subdivision narrowly in the context of civil defense); Section 536.200.1 (requiring state agencies to prepare fiscal notes when political subdivisions are impacted); Section 67.750(7) (defining "political subdivision" for purposes of Chapter 67); Section115.013(19) (providing a definition of "political subdivision" for Missouri election law); Section 105.300(8) (relating to the employment of public employees); Section 105.450(8) (defining "political subdivision" broadly with regard to conflict-of-interest laws for public employees).
[5] SB 311, § 21, 584 Laws of 1945 at 588.
[6] RSMo Supp. 2006.
[7] Relating to LAGERS.
[8] RSMo Supp. 2006.
[9] The county commission first submits a proposed E911 board to voters; if residents present a petition back to the commission requesting the E911 board, the commission will then place it on the ballot. Section190.335.2.
[10] Section 190.335.7 states that the "governing body" sets the rate; "governing body" is defined in Section 190.300 as the "legislative body for a city, county or city not within a county." *Page 1