

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| CITY OF SLATER, MISSOURI MUNICIPAL LEAGUE, CHRISTINE CATES, BARBARA SHAEFFER and JACOB K. ALBARELLI,<br><br>                              Appellants,<br><br>v.<br><br>STATE OF MISSOURI, OFFICE OF STATE COURTS ADMINISTRATOR, and MISSOURI SHERIFF'S RETIREMENT SYSTEM,<br><br>                              Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | WD78016<br><br>FILED: May 3, 2016 |

**Appeal from the Circuit Court of Cole County**
**The Honorable Jon E. Beetem, Judge**

**Before Division Four: Alok Ahuja, C.J., Gary D. Witt, J. and John M. Torrence, Sp.J.**

The Appellants filed a petition seeking declaratory and injunctive relief in the circuit court. The petition challenged the Respondents' interpretation of § 57.955.1,[1] to require municipal courts to collect a $3.00 surcharge from litigants for the benefit of the sheriffs' retirement fund. The Circuit Court of Cole County granted the Respondents' motion to dismiss, on the grounds that some of the Appellants lacked standing, and that sovereign immunity barred any remaining claims. This appeal followed. Because we conclude that none of the Appellants

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement, unless otherwise indicated.

have standing to challenge the Respondents' interpretation of § 57.955.1, we affirm the circuit court's dismissal of the petition.

## Factual Background

Section 57.955.1 states:

> There shall be assessed and collected a surcharge of three dollars in all civil actions filed in the courts of this state and in all criminal cases including violation of any county ordinance or any violation of criminal or traffic laws of this state, including infractions, but no such surcharge shall be assessed when the costs are waived or are to be paid by the state, county or municipality or when a criminal proceeding or the defendant has been dismissed by the court. For purposes of this section, the term **"county ordinance"** shall not include any ordinance of the city of St. Louis. The clerk responsible for collecting court costs in civil and criminal cases, shall collect and disburse such amounts as provided by sections 488.010 to 488.020.[2] Such funds shall be payable to the sheriffs' retirement fund. Moneys credited to the sheriffs' retirement fund shall be used only for the purposes provided for in sections 57.949 to 57.997 and for no other purpose.

The statute was initially enacted in 1983, and was amended most recently in 1996. Prior to 2013, the statute had been interpreted to be inapplicable to the municipal courts. On April 17, 2013, however, the Attorney General issued an opinion concluding that "the legislature intended that the surcharge be collected in municipal courts." Op. Mo. Att'y Gen. 20-2013 (2013). Following that opinion, the Missouri Supreme Court issued a revised "Schedule for Collection of Court Costs, Fees, Miscellaneous Charges and Surcharges," effective August 28, 2013, which indicated that the $3.00 surcharge required by § 57.955.1 should be collected by municipal courts.[3]

---

[2]      A revisor's note states that the "[o]riginal rolls contain 'section 514.015' which was changed to effectuate the court cost bill."

[3]      The Supreme Court's August 16, 2013 order promulgating the schedule, to which the schedule is attached, is available here: http://www.courts.mo.gov/sup/index.nsf/d45a7635d4bfdb8f8625662000632638/6cee3211c10ab6cd86257bcc005b10bb?OpenDocument)

Appellants are the City of Slater, Christine Cates, Barb Schaffer, the Missouri Municipal League ("MML"), and Jacob Albarelli. Cates is the Assistant City Administrator for the City of Blue Springs, and Schaffer is the Court Clerk and Court Administrator for the Municipal Court of Jefferson City. The City, Cates, Shaffer, and MML first filed their petition challenging the applicability of the surcharge in municipal courts on August 27, 2013. The Appellants later filed an amended petition naming Jacob Albarelli as an additional plaintiff.[4] The petition named the State of Missouri, the Office of State Courts Administrator, the Missouri Sheriffs' Retirement System, and Chris Koster in his official capacity as Attorney General, as defendants.

The Circuit Court dismissed the First Amended Petition without prejudice, finding that the City, Cates, Schaffer, and the MML lacked standing; that Albarelli's claim against the state was barred by sovereign immunity; and that the petition stated no viable claims as to Koster or the Retirement System.

Appellants then filed a Second Amended Petition. The Second Amended Petition sought declaratory and injunctive relief that § 57.955 did not apply to municipal courts; the petition also contended that interpreting the statute to apply to municipal courts would be unconstitutional under Article I, § 14 of the Missouri Constitution.

The Second Amended Petition named only the State and OSCA as defendants. The Retirement System was granted leave to intervene as a defendant. The defendants, who are the Respondents in this Court, again filed a motion to dismiss, on the grounds of lack of standing, failure to state a claim, and sovereign immunity. On August 29, 2014, the Circuit Court again dismissed the City, MML, Cates and Schaffer for lack of standing. Although the court found

---

[4] The original and first amended petition also included additional plaintiffs Francis J. Vatterott and Mick Wilson. Vatterott and Wilson were omitted from the Second Amended Petition whose dismissal is at issue here, and they are accordingly not parties to this appeal.

that Albarelli had standing because he had actually paid the disputed surcharge, it found that sovereign immunity barred his claims. The court's judgment also found that no viable claim was stated against the Retirement System. This appeal followed.

**Appellate Jurisdiction**

Because the Appellants allege, in part, that it would be unconstitutional to interpret § 57.955.1 to apply to municipal courts, a question arises as to whether this appeal falls within the exclusive appellate jurisdiction of the Missouri Supreme Court under article V, § 3 of the Missouri Constitution. We conclude that the case falls within our appellate jurisdiction, based on at least two separate considerations.

First, the Jurisdictional Statement of Appellants' Brief explicitly states that "[t]his case does not involve . . . the validity of a statute . . . of this State." This assertion in Appellants' Jurisdictional Statement confirms that the Appellants only invoke constitutional principles to support the reading of § 57.955.1 which they advocate. This "conditional" constitutional argument does not invoke the Supreme Court's exclusive appellate jurisdiction.

> To present a constitutional question for review on the ground that a statute is unconstitutional, the constitutionality of the statute must be directly challenged. To say that a statute would be unconstitutional if construed in a certain manner does not meet the requirement. To vest appellate jurisdiction here on a constitutional issue, the attack on the constitutionality of a statute must be that whatever it means and under any construction of which it is susceptible, it is unconstitutional.

*Knight v. Calvert Fire Ins. Co.*, 260 S.W.2d 673, 675 (Mo. 1953) (citations and internal quotation marks omitted); *see also Mo. Prosecuting Att'ys Retirement Sys. v. Pemiscot Cnty.*, 217 S.W.3d 393, 399 (Mo. App. S.D. 2007); *Whitaker v. City of Springfield*, 889 S.W.2d 869, 875 (Mo. App. S.D. 1994).

Second, none of the parties to this appeal ask us to address the merits of Appellants' underlying claims, whether those claims involve issues of statutory interpretation, or a challenge

to the constitutionality of § 57.955.1.  Instead, the parties ask us to decide only whether Appellants have standing, and whether sovereign immunity bars their claims.  "The Missouri Supreme Court . . . does not have exclusive jurisdiction, and transfer to that court is not required, where it is not necessary to construe the constitution or determine the constitutionality of a statute to resolve the issues presented on appeal."  *Evans v. Empire Dist. Elec. Co.*, 346 S.W.3d 313, 315 n.2 (Mo. App. W.D. 2011) (court of appeals had jurisdiction where "this appeal involves only the correctness of the trial court's dismissal of the case on primary jurisdiction grounds, without reaching Appellants' constitutional arguments"); *see also*, *e.g.*, *State v. Jones*, 892 S.W.2d 737, 739 (Mo. App. W.D. 1994) ("this court has jurisdiction to determine if the appellant has standing to raise a constitutional argument"; citing *State v. Ellis*, 853 S.W.2d 440, 446 (Mo. App. E.D. 1993)).

For these reasons, jurisdiction of this appeal is properly vested in this Court, and we proceed to the merits of the issues Appellants raise.

### Standard of Review

> This court reviews a trial court's grant of a motion to dismiss *de novo*.  A motion to dismiss for failure to state a claim upon which relief can be granted is solely a test of the adequacy of the plaintiff's petition.  All facts alleged in the petition are treated as true, and the petition is construed favorably to the plaintiff to determine whether the averments invoke substantive principles of law which entitle the plaintiff to declaratory relief.  This court tests the sufficiency of a petition for a declaratory judgment by asking whether the petition entitles the plaintiff to a declaration of rights or status on the facts pleaded.  The petition must set forth facts, not mere conclusions, which support the allegations and demonstrate a justiciable controversy.

*State ex rel. Chastain v. City of Kansas City*, 289 S.W.3d 759, 763 (Mo. App. W.D. 2009) (citations omitted).

Further, "[o]ur review of a dismissal . . . for lack of standing is *de novo*."  *White v. White*, 293 S.W.3d 1, 8 (Mo. App. W.D. 2009) (citation omitted).  "In addition, the existence of

5

sovereign immunity, and questions of statutory interpretation, are issues of law which we review *de novo*." *Wyman v. Mo. Dep't of Mental Health,* 376 S.W.3d 16, 18 (Mo. App. W.D. 2012).

**Analysis**

Appellants challenge the trial court's conclusions concerning their standing to sue, and concerning the applicability of sovereign immunity to bar their requests for declaratory and injunctive relief. Because we find the standing issue determinative, we address only that issue.

If a plaintiff lacks standing to sue, this presents an issue of justiciability which implicates the circuit court's subject-matter jurisdiction. *Matter of Adoption of E.N.C.*, 458 S.W.3d 387, 397 (Mo. App. E.D. 2014). "Courts have a duty to determine if a party has standing prior to addressing the substantive issues of the case. For this reason, standing cannot be waived." *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012) (citation omitted).

> If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. This state requires that plaintiffs have a legally protectable interest in the litigation so as to be directly and adversely affected by its outcome. A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute.
>
> Missouri requires that a complainant be within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question to bring an action thereunder. A plaintiff must show a personal stake in the outcome of the controversy and allege some threatened or actual injury resulting from the putatively illegal action.

*Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. banc 2011) (citations and internal quotation marks omitted).

Appellants Cates and Schaffer assert that they have standing both as taxpayers, and because the application of § 57.955.1 to municipal courts directly affects them in the performance of their official responsibilities. The City likewise alleges that the current implementation § 57.955 has a direct, harmful impact on it, while the MML argues it has

6

standing on behalf of its municipal members. Finally, although the trial court found that the petition was sufficient to establish Albarelli's standing because it alleged that he had actually paid the surcharge, on appeal the Respondents argue that decision was in error. For the reasons stated below, we find the allegations in the Second Amended Petition insufficient to confer standing on any of the Appellants.

## I.

Cates and Schaffer argue they have standing as taxpayers because they "allege in their Second Amended Petition that the municipal courts throughout the State of Missouri are presently being forced to use taxpayer resources to send funds to the Sheriff's Retirement Plan pursuant to § 57.955 RSMo."

To establish taxpayer standing, "a taxpayer must demonstrate either: (1) a direct expenditure of funds generated through taxation, (2) an increased levy in taxes, or (3) a pecuniary loss attributable to the challenged transaction of a municipality." *State ex rel Nixon v. Am. Tobacco Co., Inc.*, 34 S.W.3d 122, 132 (Mo. banc 2000). Here, Cates and Schaffer argue that the Second Amended Petition adequately alleges facts demonstrating a "direct expenditure" of state funds.

*Manzara v. State*, 343 S.W.3d 656 (Mo. banc 2011), explains that a "direct expenditure" of funds means "a sum paid out, without any intervening agency or step, of money or other liquid assets that come into existence through the means by which the state obtains the revenue required for its activities." *Id.* at 660. As we have previously stated, "in order to establish standing under the first option, a Missouri taxpayer needs to show only that his or her taxes went or will go to public funds that have or will be expended due to the challenged action." *Querry v. State Hwy. & Transp. Comm'n*, 60 S.W.3d 630, 634 (Mo. App. W.D. 2001) (citing *Nat'l Solid Waste Mgmt. Assoc. v. Dir. of Dep't of Natural Res.*, 964 S.W.2d 818, 819 (Mo. banc 1998)).

7

Not all uses of governmental revenue are "direct" expenditures under these standards. A series of cases holds that "general operating expenses which [an agency] incurs regardless" of the allegedly illegal activity are not "direct" expenditures, and are insufficient to establish taxpayer standing. *John T. Finley, Inc. v. Mo. Health Facils. Review Comm.*, 904 S.W.2d 1, 3 (Mo. App. W.D. 1995). Thus, "salaries for staff time of [agency] employees, correspondence and telephone calls" used to engage in the allegedly unlawful activity are "not the type of expenditure of public funds which would give standing, as they are general operating expenses which would be incurred whether or not the challenged transaction took place." *Ours v. City of Rolla*, 965 S.W.2d 343, 346 (Mo. App. S.D. 1998) (citing *Mid–Am. Georgian Gardens, Inc. v. Mo. Health Facils. Review Comm.,* 908 S.W.2d 715, 718 (Mo. App. W.D. 1995)); *see also*, *e.g.*, *Columbia Sussex Corp. v. Mo. Gaming Comm'n*, 197 S.W.3d 137, 145 (Mo. App. W.D. 2006); *Cmty. Health Care Ctr. of Lemay v. Mo. Health Facils. Review Comm.*, 92 S.W.3d 232 (Mo. App. W.D. 2002).

In this case, Cates and Schaffer have failed to allege facts to show that they have standing, as taxpayers, to challenge a "direct expenditure of funds generated through taxation." The Second Amended Petition does not explicitly allege that Cates and Schaffer are Missouri taxpayers (although it does allege the Missouri counties in which they reside). More importantly, the petition fails to allege that compliance with the requirements of § 57.955.1 will require expenditures, directly caused by the allegedly unlawful surcharge, which are separate and apart from the general operating expenses that municipal courts would incur regardless. Although the petition alleges that municipal court employees must "administer, collect, and transmit" the surcharge, there are no allegations that this will require greater expenditures of tax money than would otherwise be required. Significantly, the petition itself alleges that "[t]here

are a number of [other] surcharges . . . which municipal courts must by statutory mandate collect." The fact that municipal court employees already collect, account for, and remit *other* surcharges suggests that the incremental cost of administering the surcharge required by § 57.955.1 will be difficult to isolate, and may be limited or non-existent. In these circumstances, administration of the surcharge Cates and Schaffer challenge does not involve a "direct expenditure" of tax-generated funds sufficient to establish taxpayer standing.

## II.

The City, Cates and Schaffer claim they have standing in their positions as a Missouri municipality, Assistant City Administrator, and Court Clerk and Court Administrator for a municipal court, respectively, "due to the direct impact of § 57.955 being implemented on municipal courts." For reasons similar to those stated in § I, we disagree.

We first note that the "[p]ublic policy favoring judicial review of administrative decisions at the request of those aggrieved is firmly established in this state and extends to political subdivisions." *State ex rel. Sch. Dist. of City of Independence v. Jones*, 653 S.W.2d 178, 189 (Mo. banc 1983) (citing *St. Joseph Lead Co. v. State Tax Comm'n,* 352 S.W.2d 656, 659–60 (Mo. 1961)). Indeed, "[a]rguments . . . that local government units are 'mere arms of the state' with no independent right to attack statutes that affect them – have been expressly rejected in favor of a standing doctrine concerned primarily with sufficient controversy between the parties regarding matters which directly affect them." *Arsenal Credit Union v. Giles*, 715 S.W.2d 918, 921 (Mo. banc 1986) (citations and internal quotation marks omitted).

Here, however, neither the City, nor Cates or Schaffer in their official capacities, have alleged any direct impact resulting from the rule. They have not alleged that they will be required to pay the surcharge (nor could they, since § 57.955.1 explicitly exempts municipalities). They have not alleged that they are entitled to receive any part of the surcharge,

9

or that the surcharge diverts money away from their municipalities. Instead, they have merely alleged that they would be required to collect and distribute a particular surcharge along with other court costs. This situation is wholly unlike the circumstances in cases in which a municipality has been found to have standing to challenge allegedly unlawful action of another governmental entity. *See*, *e.g.*, *Ste. Genevieve Sch. Dist. R II v. Bd. of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002) (school district argued that amendment to redevelopment plan required approval of Tax Increment Financing ("TIF") commission; district had standing because it was given statutory authority to appoint members to the TIF commission, and approval of the redevelopment plan "would unlawfully deprive the district of tax revenue"); *Jones*, 653 S.W.2d at 189 (political subdivisions allege an "unlawful deprivation of their statutorily-mandated share of state school funds"); *St. Joseph Lead*, 352 S.W.2d at 661 (county challenges valuation of property subject to tax levy by county). In this case, no direct injury outside of the regular functioning of court personnel has been alleged; the claimed injury falls short of the direct impact necessary to confer standing.

The position of the City, Cates and Schaffer is notably similar to the position of the County Commission in *State ex rel. Board of Health Center Trustees of Clay County v. County Commission of Clay County*, 896 S.W.2d 627 (Mo. banc 1995). In that case, the Clay County Health Center was given independent taxing authority by statute. The Health Center's Board of Trustees authorized a certain tax levy, and transmitted information on the approved levy to the County Commission for billing and collection. The County Commission instead authorized a lesser levy, and argued that the levy approved by the Health Center's Board of Trustees was unlawful. The Supreme Court held that the County Commission did not have standing to challenge the lawfulness of the Health Center's approved levy, with these observations:

> The Commission's role for independent taxing authorities such as the Board is the ministerial duty of accumulating the levies assessed by such political subdivisions and certifying them to the collector for inclusion on the tax bills. Its role is not to act as a judge of the constitutionality of the tax.

*Id.* at 631 (cited with approval in *King-Willman v. Webster Groves Sch. Dist.*, 361 S.W.3d 414, 417 (Mo. banc 2011)). Here, the City, Cates and Schaffer are in the same "ministerial" or administrative role with respect to the collection and remittance of the surcharge: they did not establish the surcharge, they do not pay the surcharge, they are not the surcharge's ultimate recipients, and the surcharge does not direct money away from their coffers. Given the limited "ministerial" or administrative function they serve, their role (as in *Board of Health Center Trustees,*) "is not to act as a judge of the [legality] of the tax," and they do not have standing to challenge the surcharge.

The City, Cates and Schaffer also argue that "the collection of unlawful costs exposes the [Appellants] to litigation and judgments." However, they do not allege with any specificity that such lawsuits have been threatened or filed, or on what grounds such lawsuits might be filed. Appellants' argument is speculative at best, and "[w]e see no indication that mere speculation can confer standing[.]" *State ex rel. Parsons v. Bd. of Police Comm'rs of Kansas City*, 245 S.W.3d 851, 854 (Mo. App. W.D. 2007).

Thus, we find that the City, Cates, and Schaffer have failed to allege a "sufficient controversy between the parties regarding matters which directly affect them" to confer standing.

### III.

For the same reasons that the City would not have standing, the Missouri Municipal League's claim of associational standing must also fail.

> An entity has associational standing if: 1) its members would otherwise have standing to bring suit in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

11

*Mo. Bankers Ass'n v. Dir. of Mo. Div. of Credit Unions*, 126 S.W.3d 360, 363 (Mo. banc 2003) (citing *Mo. Health Care Ass'n v. Att'y Gen. of the State of Mo.*, 953 S.W.2d 617, 620 (Mo. banc 1997)).

Here, MML fails to meet the first element of associational standing. In the Second Amended Petition, MML argued that that the municipalities they represent "have a legally protectable interest at stake and will be directly affected by the outcome of this action." As we have explained in § II above, however, the petition fails to allege facts sufficient to confer standing on Missouri municipalities. MML's associational standing claim accordingly fails.

## IV.

Finally, Appellant Albarelli asserts that he has standing to challenge the surcharge because he paid the court costs in question in connection with a traffic ticket he received in the City of Blue Springs. Although the trial court found that this conferred standing on Albarelli, Respondents argue that Albarelli too lacks standing.

"A party may have standing to bring some claims but not others." *Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 n.3 (Mo. banc 2011) (citations omitted). With this principle in mind, we conclude that Albarelli lacks standing to request declaratory or prospective injunctive relief concerning the surcharge.

To establish standing, Albarelli was required to demonstrate that the relief he seeks would redress the injury he has allegedly suffered.

> Litigation of a claim requires plaintiffs to show that they have standing by demonstrating a personal interest in the litigation arising from a threatened or actual injury. In a declaratory judgment, the criterion for standing is whether the plaintiff has a legally protectable interest at stake. A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute. Although standing can be based on an interest that is attenuated, slight or remote, in all cases there must be a showing of an actual personal interest or stake in the outcome of the litigation. The requirement of a personal stake in the outcome of the litigation means that the

12

remedy sought must relate to the alleged injury. If the plaintiff's grounds for relief and remedy sought cannot alleviate the alleged injury, then, by necessity, the litigation cannot vindicate the plaintiff's alleged personal interest or stake in the outcome of the litigation. If that is the case, then the plaintiff has no standing to bring the claims he or she alleges.

*St. Louis Cnty. v. State*, 424 S.W.3d 450, 453 (Mo. banc 2014) (citations and internal quotation marks omitted).

Here, the injury claimed – Albarelli's prior payment of the surcharge – cannot be remedied by the relief he requests. The Second Amended Petition requests a declaration that imposition of the surcharge in municipal court cases is unlawful, and prospective injunctive relief prohibiting the future collection of the surcharge in municipal courts. None of this relief would remedy the injury Albarelli claims to have suffered – his prior payment of the allegedly unlawful charge. The petition does not seek a refund to Albarelli of the amount he paid, or seek damages for the allegedly improper collection of the surcharge from Albarelli.[5] Albarelli has not argued that he will again be subject to the surcharge at some point in the future. Therefore, we see nothing in the Second Amended Petition that would be sufficient to confer standing on Albarelli, given the relief the petition requests.[6]

**Conclusion**

We affirm the trial court's dismissal of the Second Amended Petition.

---

[5] Among other things, the Second Amended Petition *does* pray for a declaration that the Office of State Courts Administrator be directed to rescind the surcharge, and – "should a court receive a refund of inappropriately collected amounts" – "to provide a mechanism for refunding overpayments to individual defendants." The petition does not, however, seek relief which would actually require that the surcharge be refunded by the Retirement System to the municipal courts that collected it, and that those amounts thereafter be refunded directly to the persons who paid it.

[6] The claims made in this case can be contrasted with the claims made in cases challenging municipal traffic citations issued through the use of "red-light cameras," where the plaintiffs who had paid a fine sought a refund of the fine and/or compensatory damages. *See Damon v. City of Kansas City*, 419 S.W.3d 162, 192 (Mo. App. W.D. 2013); *Unverferth v. City of Florissant*, 419 S.W.3d 76, 85 (Mo. App. E.D. 2013) (overruled on other grounds by *City of Moline Acres v. Brennan*, 470 S.W.3d 367, 374 (Mo. banc 2015)). Albarelli does not seek similar relief here.

13

_____

Alok Ahuja, Chief Judge

All concur.