Barbara BURNETT, et al, Respondents,

v.

KANSAS CITY SCHOOL BOARD, et al, Appellants.

No. WD 68828.

Missouri Court of Appeals, Western District.

Oct. 26, 2007.

Allan Hallquist, Kansas City, MO, for appellant.

Steven Mauer, Kansas City, and Bradley Alan Constance, Independence, MO, for Respondent.

RONALD R. HOLLIGER, Judge.

The Kansas City School Board ("KCMSD") appeals a mandamus order directing that it certify a boundary change question for submission to the voters of the Kansas City School District at the November 6, 2007, election. KCMSD contends that the boundary change law, RSMo section 162.431,[1] does not apply to districts like Kansas City's, which hold biennial, rather than annual, elections for its board members. The boundary change is proposed in a petition presented to KCMSD seeking to transfer a large section of the Kansas City School District to the Independence School District. We find that the boundary change statute is unambiguous in relevant part and applies to KCMSD. The board therefore has a ministerial duty to place the issue before its voters. The trial court did not abuse its discretion and properly granted the writ directing KCSMD to certify the petition to the Kansas City Election Board for placement on the November ballot.

## Factual and Procedural Background

Respondents Barbara Burnett, Lois McDonald, Anthony Miller, and Patricia Rector (collectively "Relators") seek to place a school district boundary change question involving the Kansas City and Independence school districts before the voters pursuant to section 162.431. Pursuant to that statute, Relators obtained the signatures of voters from both of the affected districts. Relators then submitted the petition signatures to the Jackson County Board of Election Commissioners and the Kansas City Board of Election Commissioners in order to place the boundary

change issue on the ballot for the November 6, 2007, election. Both election boards counted and verified the signatures, determining that they were sufficient to place the issue on the ballot. The Independence School Board certified the petition to the election board. KCMSD took no action on the petition for a boundary change. Relators then petitioned for a writ of mandamus, claiming KCMSD had a ministerial duty to call the election under subsection 162.431.1.

At oral argument before the trial court, KCMSD asserted that the boundary change statute does not apply to it because section 162.431 requires petition signatures from voters in the "last annual school election." As an urban school district created prior to 2000, KCMSD holds biennial elections. *See* section 162.481. In issuing the writ, the trial court relied upon section 162.461, which states that urban districts are "governed by the same general laws as other seven-director school districts, except as otherwise provided by law." The trial court held that the word "annual" in section 162.431 is not explicit enough to constitute an exception under the "otherwise provided by law" provision in section 162.461. This appeal follows.

## Standard of Review

■■■ Mandamus is appropriate when seeking to require an official to perform a ministerial act. *State ex rel. Mo. Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. banc 1999). This court reviews the grant of a writ of mandamus under an abuse of discretion standard. *Bergman v. Mills*, 988 S.W.2d 84, 88 (Mo. App. W.D.1999). "Under [that] standard,

1. Section 162.431 was amended twice during the 2007 legislative session. *See* 2007 Mo. Laws p. 667 section 162.431; 2007 Mo. Laws p. 1092 section 162.431. All references to that statute in this opinion are to the most recent version, which can currently be found on page 1092 of the session laws. Except where otherwise noted, all other statutory references in this opinion are to RSMo (2000).

we will reverse the trial court's ruling only if it is 'so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration.' " *Id.* (quoting *Whitman's Candies, Inc. v. Pet Inc.*, 974 S.W.2d 519, 527 (Mo.App. W.D.1998)). We will not find an abuse of discretion "if reasonable people might differ about the propriety of the trial court's decision." *Whitman's*, 974 S.W.2d at 527–28. Matters of statutory interpretation are reviewed *de novo*. *State ex rel. Wolfrum v. Wiesman*, 225 S.W.3d 409, 411 (Mo. banc 2007).

## Discussion

KCMSD's principal contention centers on the meaning and applicability of the school district boundary change statute, which states, in relevant part:

> When it is necessary[2] to change the boundary lines between seven-director school districts, in each district affected, ten percent of the voters by number of those voting for school board members in the last annual school election in each district may petition the district boards of education in the districts affected, regardless of county lines, for a change in boundaries. The question shall be submitted at the next election, as the term "election" is defined in section 115.123, RSMo.

Section 162.431.1.[3]

KCMSD argues on appeal, as it did before the trial court, that the word "annual," as used in the first sentence of the statute, manifests the legislature's intent that the petition-initiated boundary change provisions not apply to a school district, like KCMSD, that does not hold annual elections for school board members. In considering this argument, the trial court examined the language at issue, finding it to be unambiguous, but also finding that the terms of the statute, "when given their ordinary meaning, produce an illogical or absurd result in light of the statute's purpose." *Sisco v. Bd. of Trs. of Police Ret. Sys. of St. Louis*, 31 S.W.3d 114, 119 (Mo. App. E.D.2000). Recognizing the general presumption that the legislature intends a logical result when enacting statutes, the trial court proceeded to apply rules of statutory construction in an effort to divine the legislature's intent. *See id.*

On appeal, however, we find no need to resort to rules of statutory construction, as the alleged ambiguity (or absurdity, as the case may be), is not relevant to the issue at hand: whether section 162.431 applies to the Kansas City Missouri School District.

■ There is no dispute that section 162.431 is a general law applicable to seven-director school districts. KCMSD's argument focuses on the fact that it is an urban district. *See* section 160.011.14. Since urban districts were created in 1963, they have "possess[ed] the same corporate powers and [have been] governed by the same general laws as other seven-director school districts, except as otherwise provided by law." Section 162.461. KCMSD argues that the word "annual" in section 162.431 creates an exception "otherwise provided by law" pursuant to section 162.461. We disagree.

---

2. In *England v. Eckley*, 330 S.W.2d 738 (Mo. banc 1960), the Supreme Court held that "necessity," as used in section 162.431's predecessor statute, was initially a political question for determination by the voters of each affected district and, if they did not agree, for an arbitration panel provided by statute. *Id.* at 745.

3. By statute, KCMSD has nine directors but does not contend that this fact exempts it from the boundary change law since it acknowledges that section 162.461 supplies both the same powers and duties for urban districts as seven-director districts.

The legislature has made explicit exceptions for urban districts in other statutes within Chapter 162. *See* sections 162.261, 162.301 ("seven-director school district, other than an urban district"); section 162.291 ("each seven-director district other than urban districts"). Other exceptions exist not within the language of the statute pertaining to seven-director districts, but by way of parallel provisions governing urban districts. *Compare* section 162.461 (urban district name), *with* sections 162.311, 162.321 (seven-director district name); *Compare* section 162.481 (establishment of urban districts), *with* sections 162.211, 162.221 (establishment of seven-director districts).[4]

We find no abuse of discretion in the trial court's finding that the word "annual" in section 162.431 does not constitute an exception to the rule that urban districts are subject to the same general laws as seven-director districts. An examination of the history of the statutory language at issue is illustrative.[5] Section 162.431 was enacted in 1963, as part of a general revision of the laws governing school districts. 1963 Mo. Laws p. 226 section 3–42. Just as in its current form, the original statute made reference to two different elections.

The first reference to an election is of particular relevance in the instant case. That reference is to a prior election (the signature determinative election), which is used to calculate the number of petition signatures required to place a boundary change question before the voters. In 1963, that signature determinative election was referred to as "the last preceding election of such [school board] members." *Id.* Obviously such an election could have been annual or biennial. In 1997, for no reason apparent on the face of the statute, this language was amended to its current form, referring to "the last annual school election." 1997 Mo. Laws p. 529–30 section 162.431.

The statute's second reference to an election is of less relevance in the instant appeal. That second reference is to a future election, at which the voters will adopt or reject the proposed boundary change. In 1963, that future election was referred to as "the next annual or biennial election." 1963 Mo. Laws p. 226 section 3–42. In 1978, as part of a general revision of the state's election laws, this language was amended so that the boundary change would be submitted to the voters at "the next municipal election." 1978 Mo. Laws p. 325 section 162.431. In 2007, the language was amended to its current form, directing that the boundary change be submitted to a vote at "the next election, as the term 'election' is defined in section 115.123, RSMo." 2007 Mo. Laws p. 1092 section 162.431.

4. KCMSD attempts to distinguish the statutes governing the creation of seven-director districts from the statute governing how seven-director districts move into the "urban class." It is true that the creation of an entirely new district is not quite the same thing as allowing an existent seven-director district to become an urban district. Nonetheless, the statutes governing these processes are sufficiently similar in form and purpose to reasonably be characterized as "parallel provisions."

5. While our analysis of the boundary change statute begins with the enactment of section 162.431 in 1963, Missouri has had statutes permitting boundary changes between school districts since 1874. Laws 1874, p. 151 section 18. Our Supreme Court gave the immediate predecessor to section 162.431 a broad application in *England v. Eckley*, 330 S.W.2d 738 (Mo. banc 1960). The court there noted that the history of the statute "indicates a tendency to broaden and extend the application of the procedure rather than to restrict it." *Id.* at 744. "If any intent is to be gained from the continuing action of the legislature, it certainly leans toward a broad application ..." *Id.*

From this statutory history, KCMSD claims that the deletion of the phrase "next annual or biennial election," in 1978, and the insertion of the phrase "last annual school election," in 1997, evidences the legislature's intent to exclude school districts that hold biennial elections from the operation of the statute. In making this argument, KCMSD is forced to overlook a period of eleven years in which section 162.431 makes no mention of the periodicity of school board elections. That eleven-year gap is difficult to explain if the terms "annual" and "biennial" are to be accorded the import that KCMSD proposes. Of even greater significance is the fact that the 1963 phrase "**next** annual or biennial election" and the 1997 phrase "**last** annual election" are in different sentences and refer to two different elections. We conclude that the legislative history of section 162.431 does not support KCMSD's position on appeal.

Stripped of its references to statutory history, KCMSD's argument is that "it is impossible for Section 162.431 to apply to school districts authorized only to hold biennial elections because the petition procedure of Section 162.431 is dependent upon annual elections." This argument is substantially identical to one raised, albeit in a different context, in *State ex rel. Hickman v. City Council of Kirksville*, 690 S.W.2d 799 (Mo.App. W.D.1985). The relators in *Hickman* ("the Hickmans") attempted to use the initiative procedure applicable to third class cities to place an issue before the voters. *Id.* at 800. When the Hickmans presented their petition to the city council, that body refused to certify the question, asserting that the city was not subject to the statute governing initiative referenda. *Id.* That statute required the collection of a certain number of signa-

tures based upon the number of "votes cast for all candidates for mayor at the last preceding election." *Id.* at 801 (quoting RSMo 78.200 (1978))[6]. The council argued that because the city at issue operated under the city manager form of government, "there [was] no method by which to compute the number of signatures since . . . the mayor [was] not elected by a popular vote." *Id.* On appeal from the grant of a writ of mandamus ordering the election, this court rejected the council's argument, noting that: "Had the legislature intended to delete the right to initiative under this form of organization, it could have specifically done so. The problem then is simply the legislature's inadvertence to provide a new method of computing the requisite number of signatures." *Id.*

Just as the absence of a popular election for the office of mayor created a problem in *Hickman*, the absence of annual elections for KCMSD school board members creates a problem in the instant case. And the problem is of the exact same nature: what is the proper "method of computing the requisite number of signatures"? That, however, is not the issue raised by KCMSD. KCMSD does not claim that the Relators' petition bears an insufficient number of signatures or that the election board erred or was not able to determine the number of signatures required.

■ Because no such claim is asserted, the exact meaning of the word "annual," as that term is used in section 162.431, is not at issue, and any interpretation (or construction) of that term would be mere dicta in the present case. This court has no jurisdiction "to issue advisory opinions on matters of law that are not part of a live case or controversy." *Riverside–Quindaro Bend Levee Dist., Platte County, Mo. v.*

---

6. Section 78.573, which solves the problem at issue in *Hickman*, was passed in 1984, but after the events giving rise to that case. *Hickman*, 690 S.W.2d at 801.

*Mo. Am. Water Co.*, 117 S.W.3d 140, 153 (Mo.App. W.D.2003).[7] Having fully decided the live issues in the present appeal, and as a matter of judicial restraint, we decline to go further.

## Conclusion

The trial court judgment is affirmed.

VICTOR C. HOWARD, Chief Judge, and PAUL M. SPINDEN, Judge, concur.

---

7. We note that through various statutory amendments boards of education of various classifications may have annual or biennial elections even if classified as an "urban district" or a "seven-director district." Frequency of elections, therefore, would seem an inconsistent and purely arbitrary method of determining applicability of the boundary change statute.