

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI, EX REL.  )
JERRY SCHERSCHEL,           )
                            )   WD77951
            Respondent,     )
                            )   OPINION FILED:  September 8, 2015
v.                          )
                            )
CITY OF KANSAS CITY, MISSOURI,  )
ET AL.,                     )
                            )
            Appellant.      )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Justine E. Del Muro, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Joseph M. Ellis, Judge and
James E. Welsh, Judge

The City of Kansas City, Missouri, ("City") appeals a mandamus judgment directing it to comply with the Administrative Code of Kansas City by adjusting employee Jerry Scherschel's ("Scherschel") pay classification and pay rate.  The City argues that the trial court erred because (1) Scherschel failed to show by clear and convincing evidence that he was entitled to a mandamus judgment; (2) the judgment

relied on hearsay testimony; and (3) the judgment improperly awarded money damages. Finding no error, we affirm.

## Factual and Procedural History[1]

Section 906(a) of the City Charter provides that the City Council "shall establish a schedule of compensation for employees in the municipal service." Section 906(b) of the City Charter provides that the schedule of compensation shall be uniform "for like service as determined by the grading and classification of the Human Resources Director." "Such schedule of compensation may establish a minimum and a maximum for any class . . . . An increase in compensation may be granted by the City Manager or other appointing authority upon the basis of efficiency and seniority records, ***subject to such rules and regulations as may be established***." City Charter, Section 906(b) (emphasis added).

As directed by the City Charter, the City Council has enacted a classification and compensation schedule for City employees pursuant to duly enacted ordinances. These schedules, and related rules and regulations adopted by the City Council, are set forth in the City's Administrative Code ("Code"). Pay rate schedules for the occupational group classified as "Public Safety and Inspectional," a group which includes the "Security Specialist" and "Airport Police Officer" positions, are set forth in Code Section 2-1078.

Scherschel became a permanent employee with the City on September 29, 1997. By early 2011, Scherschel was classified as a "Security Specialist." Pursuant to Code Section 2-1078, as adopted by the City in May 2011 pursuant to Ordinance No. 110241,

---

[1]The following facts principally come from the stipulated facts the parties provided to the trial court.

2

the Security Specialist position had a designated pay grade of "M-G." On May 22, 2011 Scherschel changed positions with the City and became an Airport Police Officer. Pursuant to Code Section 2-1078, the Airport Police Officer position had a designated pay grade of "M-HB."

Historically, Code Section 2-1075 has outlined the authorized salaries for positions based on pay grades. The version of Code Section 2-1075 in effect in 2011 specified a minimum and maximum "open" salary range for each recognized pay grade. Code Section 2-1075 directed that a position with a pay grade of M-G had a minimum monthly salary of $2,649 and a maximum monthly salary of $4,050; and that a position with a pay grade of M-HB had a minimum monthly salary of $1,992 and a maximum monthly salary of $4,722. Code Section 2-1075 identified pay grade M-HB as two pay grades above pay grade M-G.

Most pertinent to this case is Code Section 2-1086, entitled "[i]nterpretation and application of compensation plan." Code Section 2-1086(c) provides that "[u]nder each salary schedule there is set forth a minimum and maximum salary rate." Code Section 2-1086(i) addresses "[s]alary rate upon promotion, transfer or demotion." Code Section 2-1086(i)(1)(A) defines a promotion as "[w]hen an employee moves from one position to a vacant position *having a higher maximum rate*." (Emphasis added.) Code Section 2-1086(i)(1)(B) defines a demotion as "[w]hen an employee moves from one position to a vacant position *having a lower maximum rate* than the position previously vacated." (Emphasis added.) Code Section 2-1086(i)(3) provides that "[e]mployees who are within six months of their next pay anniversary date when promoted *shall receive a pay*

3

*increase* according to the following: . . . (B) With a two-grade increase, the employee will receive a ten percent increase." (Emphasis added.) Finally, Code Section 2-1086(i)(4) provides that "[i]n all cases the new rate of pay shall be at least the minimum and not more than the maximum of the new pay grade."

When Scherschel was offered the position as an Airport Police Officer, the maximum monthly salary for the position of Security Specialist was $4,050 per month, and the maximum monthly salary for the position of Airport Police Officer was $4,722 per month. Thus, a move to the position of Airport Police Officer fell with the definition of "promotion" set forth in Section 2-1086(i)(1)(A). However, Scherschel was asked to sign a voluntary demotion memorandum prepared by Aviation Department Director Mark VanLoh ("VanLoh"). The memorandum indicated that Scherschel was "voluntarily accept[ing] a position . . . as an Airport Police Officer" effective May 22, 2011, and understood that "by accepting this position [he would] take a decrease in [his] monthly salary, from $3,931 to $3,341." A personnel transaction form entered by the City on June 2, 2011, confirmed that Scherschel was designated as an Airport Police Officer with a pay grade of M-HB receiving a salary of $3,341 a month, a reduction of fifteen percent when compared to the salary he had been receiving as a Security Specialist.

On April 14, 2013, Scherschel wrote a letter to VanLoh protesting the classification of his move to the Airport Police Officer position as a demotion and protesting the fifteen percent reduction in his pay. In the letter, Scherschel recounted a conversation he had with Acting Chief of KCI Airport Police Captain James Harmon ("Harmon") at the time Scherschel was considering the Airport Police Officer position.

4

Harmon told Scherschel that he "would be required to take a demotion and a reduction in [his] pay rate upon becoming an [Airport Police Officer]." Harmon told Scherschel that the Airport Police Officer position included three job classifications: Airport Police Officer Trainee, Airport Police Officer I, and Airport Police Officer II; that the classifications contained twenty three steps in pay; and that Scherschel was not qualified to maintain the pay rate he was receiving as a Security Specialist because he did not hold the certifications necessary to be an Airport Police Officer II. Harmon also told Scherschel that he "would not qualify for a pay advancement until [Scherschel] met the certification requirements and serv[ed] four years as an Airport Police Officer I."

Scherschel's letter noted that he had since learned that Code Section 2-1078 was amended by the City in March 2005 pursuant to Ordinance No. 050222 to eliminate the three sub-classifications described to him by Harmon in favor of a single Airport Police Officer position with a pay grade of M-HB. Ordinance No. 050222 also amended Code Section 2-1075 to describe sixteen permissible compensation levels for positions with a pay grade of M-HB. Scherschel's letter pointed out that Code Section 2-1075 was promptly again amended by the City in April 2005 pursuant to Ordinance No. 050424 to eliminate permissible compensation levels within pay grades in favor of "open" salary ranges for each pay grade, describing only a minimum and a maximum monthly pay rate. It was this version of Code Section 2-1075 that was in effect when Scherschel accepted the position of Airport Police Officer.

Scherschel's letter requested that his move to the Airport Police Officer position be reclassified as a promotion pursuant to Code Section 2-1086(i)(1)(A) and that his

5

compensation be retroactively adjusted to reflect the ten percent increase in pay he was entitled to receive pursuant to Code Section 2-1086(i)(3)(B).

On June 4, 2013, Human Resources Director Gary O'Bannon ("O'Bannon") responded to Scherschel's letter, stating that Scherschel's "current compensation is correct, his pay upon his voluntary demotion was calculated correctly and that he is classified appropriately." O'Bannon's letter claimed that Code Section 2-1086 affords the Human Resources Director the authority to create specific class and pay plans for city departments and that "[t]he existing competencies received my approval in 2005, and they were subsequently approved via city ordinance." O'Bannon's letter referred to Ordinance No. 050222 and claimed the ordinance specifically authorized the creation of sub-classifications within the position of Airport Police Officer. O'Bannon's letter claimed that the Human Resources Director was thus allowed to require "qualified incumbents to matriculate through the pay ranges based on the demonstration of competencies established and communicated by the Aviation Department." O'Bannon stated that because Scherschel did not possess the certifications "to move into zone 3 of the pay range" (the Airport Police Officer II classification) at the time he accepted the Airport Police Office position, Scherschel could not receive compensation within the pay range ascribed to that sub-classification.

On December 20, 2013, Scherschel filed a petition for a writ of mandamus. Scherschel argued that the City failed to perform a ministerial duty by refusing to properly classify his pay rate pursuant to the requirements of the Code. He requested that the City re-classify his pay rate to include the ten percent raise he should have received

6

upon moving to the Airport Police Officer position on May 22, 2011, plus any subsequent raises he received, and to award him $32,730.42 in back pay. On January 27, 2014, the trial court issued a preliminary order in mandamus, directing the City to respond to Scherschel's petition.

The City filed a memorandum opposing Scherschel's petition, repeating the arguments set forth in O'Bannon's letter. The City's memorandum attached an undated document titled "Airport Police Officer Salary and Classification Review" and argued that the City did not fail to perform a ministerial duty because Scherschel "was treated in accordance with the rules and policies set in place by the Aviation Department . . . since 2005."

Prior to trial, Scherschel and the City filed a joint stipulation of facts which stipulated to the admission of Scherschel's letter to VanLoh into evidence. The City stipulated that the Airport Police Officer position, an "M-HB" pay grade position, was a two pay grade increase over the Security Specialist position, an "M-G" pay grade position. The City also stipulated that Scherschel accepted the Airport Police Officer position within six months of his next pay anniversary date.

During the trial to the court, Scherschel was the only witness. Scherschel recounted his conversation with Harmon prior to accepting the position of Airport Police Officer and signing the voluntary demotion memorandum. Scherschel testified that he signed the voluntary demotion memorandum in reliance on his conversation with Harmon. The City objected to Scherschel's testimony as hearsay. The trial court overruled the objection, stating that Scherschel's testimony was not being received for the

truth of Harmon's statements but rather to explain Scherschel's subsequent action in signing the voluntary demotion memorandum. The City offered no evidence, relying solely on its memorandum filed in opposition to Scherschel's petition.

On September 6, 2014, the trial court issued a permanent writ of mandamus judgment. The judgment "mandated [the City] to comply with Code Section 2-1086(i)(1)(A) and 2-1086(i)(3) in determining [Scherschel's] pay classification, and to adjust [Scherschel's] pay consistent with his pay classification as of May 22, 2011."

The City timely appealed.

## Summary of Issues on Appeal

The City raises three points on appeal. In its first point, the City argues that the trial court erred in issuing a permanent writ of mandamus because Scherschel failed to show that he had a clear, unequivocal, and specific right to the salary modification he sought. In its second point, the City argues that the trial court erred in admitting Scherschel's testimony about his conversation with Harmon because the testimony was inadmissible hearsay. In its third point, the City argues that the trial court erred in awarding Scherschel money damages.

## Point One

In its first point, the City argues it did not fail to perform a ministerial duty because Scherschel was treated in accordance with the internal Aviation Department classifications and salary ranges for the Airport Police Officer position.

8

## Standard of Review

"Mandamus is appropriate when seeking to require an official to perform a ministerial act." *Burnett v. Kansas City Sch. Bd.*, 237 S.W.3d 237, 238 (Mo. App. W.D. 2007) (citing *State ex rel. Mo. Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. banc 1999)). "This court reviews the grant of a writ of mandamus under an abuse of discretion standard." *Burnett*, 237 S.W.3d at 238. "Under [that] standard, we will reverse the trial court's ruling only if it is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration." *Id.* at 238-39 (internal quotations omitted). "We will not find an abuse of discretion if reasonable people might differ about the propriety of the trial court's decision." *Id.* at 239. "Matters of statutory interpretation are reviewed *de novo*." *Id.* (citing *State ex rel. Wolfrum v. Wiesman*, 225 S.W.3d 409, 411 (Mo. banc 2007)).

"The remedy of a writ of mandamus is only appropriate where a party has a clear duty to perform a certain act." *State ex rel. Lee v. City of Grain Valley*, 293 S.W.3d 104, 106 (Mo. App. W.D. 2009) (internal quotations omitted). "A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 725 (Mo. banc 2007) (internal quotations omitted). "Whether a petitioner's right to mandamus is clearly established and presently existing is determined by examining the statute or ordinance under which petitioner claims the right." *State ex rel. Lee*, 293 S.W.3d at 107.

**Analysis**

The City argues that it performed its ministerial duty by classifying and paying Scherschel according to internal pay zones established by the Aviation Department that modified the salary ranges provided in the Code. The City supports its argument by referencing the undated document attached to the memorandum filed in opposition to Scherschel's petition. According to the City, that document outlines the three approved sub-classifications and corresponding pay steps within the Airport Police Officer position as codified in March 2005 when the City passed Ordinance No. 050222.

The City's argument is flawed in two respects. First, the City's argument ignores that Ordinance No. 050222 amended Code Section 2-1078 to *eliminate* the three sub-classifications described in the undated internal document relied on by the City in favor of a single Airport Police Officer position with a pay grade of M-HB. The City's argument also ignores that Ordinance No. 050222 amended Code Section 2-1075 to outline sixteen steps within pay grade M-HB positions, but that Ordinance No. 050424, adopted barely a month later in April 2005, *eliminated* steps within pay grades in favor of open salary ranges for each pay grade specifying a minimum and maximum monthly salary rate.

Second, the City's argument ignores that regardless of whether the Aviation Department Director retained some authority and discretion to sub-classify the Airport Police Officer position following the amendment to Code Section 2-1078 in March 2005, and the amendments to Code Section 2-1075 in March and April 2005, that authority and discretion was expressly "subject to such rules and regulations as may be established."

10

City Charter Section 906(b). One such "rule and regulation" is Code Section 2-1086, which details the parameters for interpreting and applying the compensation plan approved by the City Council. Code Section 2-1086(i)(1)(A) unequivocally provides that when an employee moves "from one position to a vacant position having a higher maximum rate," that employee has been promoted. Code Section 2-1086(i)(3) unequivocally provides that when an employee is promoted within six months of his pay anniversary date, the promoted employee "*shall* receive a pay increase" calculated based on the pay grade increase. (Emphasis added.) In the case of a two pay grade increase, Code Section 2-1086(i)(3)(B) unequivocally provides that the promoted employee "*will* receive a ten percent increase." (Emphasis added.) The City stipulated to facts that yield the inescapable conclusion that Scherschel was promoted when he moved from the Security Specialist position to the Airport Police Officer position and that his promotion was a two pay grade increase that occurred within six months of Scherschel's next pay anniversary date. Scherschel plainly met his burden to establish that the City had a clear duty to characterize his classification and compensation according to the unequivocal provisions of the City's Code.

The City nonetheless argues that it retained the discretion to disregard the provisions of Code Sections 2-1086(i)(1)(A) and 2-1086(i)(3)(B). The City argues that Code Section 2-1086(i)(4) provides that "[i]n all cases," the new rate of pay for a promoted employee "shall be at least the minimum and not more than the maximum of the new pay grade." The City suggests this provision restores complete discretion in the proper appointing authority to set compensation for a promoted employee anywhere

11

along the spectrum of the "open" salary range assigned to a pay grade. This argument is without merit. Code Section 2-1086(i)(4) does nothing more than to set the outside parameters of permissible compensation. It does not bestow authority on an appointing authority to ignore the balance of Code Section 2-1086(i). In fact, to construe Code Section 2-1086(i)(4) as the City suggests would render meaningless and superfluous Code Section 2-1086(i)(1) defining promotion and demotion and Code Section 2-1086(i)(3) mandating salary increases for promotions within six months of a pay anniversary date.

The City also argues that even if it was obligated by the Code to treat Scherschel's move to the Airport Police Officer position as a promotion, Scherschel waived that characterization by signing the voluntary demotion memorandum. The City cites no authority for the proposition that it has the authority to disregard the Code's directives addressing the mandatory compensation of City employees by an agreement purportedly reached with an employee. Rule 84.04(d) requires an appellant to provide appropriate citation to authority in support of a contention on appeal. *Roberts v. State*, 356 S.W.3d 196, 205 (Mo. App. W.D. 2011). In the absence of doing so, or of an explanation for the inability to do so, we may consider the argument abandoned or waived. *Id.*; *see also Rios v. State*, 368 S.W.3d 301, 317 (Mo. App. W.D. 2012).

More to the point, Scherschel explained that he only signed the voluntary demotion letter because he relied on Harman's characterization of the City's compensation obligations. The City offered no evidence to the contrary. The City's clear

12

duty to follow the Code does not disappear simply because Scherschel was persuaded by misinformation to sign a demotion letter.

Scherschel clearly demonstrated that his move to the Airport Police Officer position should have been considered a promotion under Section 2-1086(i)(1)(A) and that he should have received a raise as a result of that promotion under Section 2-1086(i)(3)(B). In its judgment, the trial court ruled that "[t]his case is not about setting out salary ranges as [the City] would argue . . . it is about enforcing an ordinance that determines the promotion or demotion classification of an employee." The trial court did not abuse it discretion by mandating the City "to comply with Code Section 2-1086(i)(1)(A) and 2-1086(i)(3) . . . ."

Point one is denied.

## Point Two

In its second point, the City argues that the trial court abused its discretion in admitting and relying on testimony regarding a conversation Scherschel had with Harmon because the testimony was inadmissible hearsay. The City asserts that the admission of this testimony deprived it of a fair trial.

## Standard of Review

"The trial court has broad discretion in determining whether to admit or exclude evidence." *State v. Joyner*, 458 S.W.3d 875, 880 (Mo. App. W.D. 2015). "Thus, we review the trial court's decisions regarding the admission of evidence for an abuse of discretion." *Id.* "For evidentiary error to cause reversal, prejudice must be demonstrated." *State v. Ise*, 460 S.W.3d 448, 459 (Mo. App. W.D. 2015) (quoting *State*

13

*v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009)). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Ise*, 460 S.W.3d at 459 (quoting *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006)).

**Analysis**

The City asserts that Scherschel's testimony about what Harmon told him was inadmissible hearsay. This argument ignores that the City stipulated to the admission into evidence of Scherschel's letter to VanLoh in which Scherschel recounted the conversation he had with Harmon before accepting the Airport Police Officer position. Scherschel's testimony at trial simply repeated the details described in his letter. By stipulating to the admission of Scherschel's letter into evidence, the City waived any objection to Scherschel's consistent trial testimony on the basis of hearsay. *Mullenix-St. Charles Properties, L.P. v. City of St. Charles*, 983 S.W.2d 550, 557 (Mo. App. E.D. 1998) ("[A] party waives any objection to the admission of evidence that it has stipulated . . . .").

In any event, Scherschel's trial testimony regarding his conversation with Harmon was not admitted for its truth and was thus not hearsay. "Hearsay is defined as 'any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value.'" *State v. Reynolds*, 456 S.W.3d 101, 104 (Mo. App. W.D. 2015) (quoting *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997)). But "testimony of what another said, when offered in explanation of conduct rather than as proof of the facts in the other's statement, is not inadmissible hearsay."

14

*State v. Leisure*, 796 S.W.2d 875, 880 (Mo. banc 1990). Scherschel testified at trial that his decision to sign the voluntary demotion memorandum was based on his conversation with Harmon. The trial court correctly responded to the City's hearsay objection at trial by limiting the admission of Scherschel's testimony to an explanation of his subsequent decision to sign the voluntary demotion letter.

Point two is denied.

## Point Three

In its third point, the City argues that the monetary damages awarded in the mandamus judgment were improper because Scherschel did not demonstrate a statutory basis supporting an award of monetary damages in a mandamus action.

## Standard of Review

"This court reviews the grant of a writ of mandamus under an abuse of discretion standard." *Burnett*, 237 S.W.3d at 238. "Under [that] standard, we will reverse the trial court's ruling only if it is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration." *Id.* at 238-39.

## Analysis

The City argues that the trial court erred in awarding Scherschel monetary damages. The premise of the City's argument is inaccurate. The trial court did not award Scherschel monetary damages when it issued the permanent writ of mandamus. The trial court simply "mandated [the City] to comply with Code Section 2-1086(i)(1)(A) and 2-1086(i)(3) in determining [Scherschel's] pay classification, and to adjust [Scherschel's] pay consistent with his pay classification as of May 22, 2011." Though the effect of the

15

mandamus judgment is to impose an obligation on the City to pay Scherschel all that he would have been paid but for the City's failure to timely perform its ministerial duty, and though, failing to do so, the City may well be subject to a suit for monetary damages,[2] those "effects" do not render the mandamus judgment a "money judgment."

The City is effectively arguing that mandamus will never lie when the "ministerial duty" sought to be enforced involves the clear duty to pay money. We disagree. The result here is indistinguishable from circumstances where mandamus is secured to collect on judgments against political subdivisions. *See Otte v. Missouri State Treasurer*, 141 S.W.3d 74, 76 n.3 (Mo. App. E.D. 2004) ("[T]he preferred means to collect money clearly owed by the state is mandamus."); *State ex rel. Hufft v. Knight*, 121 S.W.2d 762, 764 (Mo. App. 1938) (noting that "[s]ince an execution may not run against the property of a . . . political sub-division of the State the only other procedure available to a judgment creditor to enable him to collect his judgment is for a court of competent jurisdiction to issue its writ of mandamus . . ."). There is simply no authority for the proposition that mandamus will not lie to enforce a clear duty where the effect of the duty will be to require remuneration.

The City correctly argues in its brief that monetary damages are only available in a mandamus proceeding in Missouri if they are based upon a false return,[3] and that

---

[2]*See, e.g., Steadley v. Stuckey*, 87 S.W. 1014 (Mo. App. 1905) (where, after being compelled by mandamus in an earlier proceeding to canvass the vote to declare plaintiff duly elected into a office, the city clerk was sued for the unpaid salary deprived the plaintiff while awaiting canvassing of the vote).

[3]Section 529.060 governs damages in a mandamus action. Section 529.060 provides that "[i]n case a verdict shall be found for the person suing out such writ . . . he shall recover his damages and costs, in such manner as he might do in a civil action for a false return, and the same may be levied by execution, as in other cases." This provision has been interpreted to mean that "a successful relator in a mandamus proceeding may not recover damages unless they are based upon a false return." *State ex rel. Raine v. Schriro*, 914 S.W.2d 56, 59 (Mo. App.

16

Scherschel did not plead a false return in his petition for a writ of mandamus. However, because, as we have explained, the mandamus judgment did not award monetary damages to Scherschel, the City's argument is of no import.

Point three is denied.

## Conclusion

The trial court's judgment of a permanent writ of mandamus is affirmed.

_Cynthia L. Martin_
_____
Cynthia L. Martin, Judge

All concur.

---

W.D. 1996) (citing *Smith v. Berryman*, 272 Mo. 365, 199 S.W. 165, 166 (Mo. banc 1917)); *Leamon v. City of Independence*, 625 S.W.2d 204, 208 (Mo. App. W.D. 1981). *Schriro* explained that the concept of a false return comes from the common law history of the writ of mandamus and that *Berryman*, after reviewing that history and the legislative history of Missouri's mandamus statutes, concluded that a successful relator has no recoverable damages "unless the respondent by making a false return, and thereby raising a false issue of fact, as contradistinguished from pure issues of law, puts the relator to vexation and expense in disproving such false issue of fact." *Schriro*, 914 S.W.2d at 59 (quoting *Berryman*, 199 S.W. at 166). "In such cases, and in no other, can a successful relator in mandamus recover damages." *Berryman*, 199 S.W. at 166. Finally, *Schriro* noted that even through *Berryman* was "interpreting prior versions of the mandamus statutes, the provisions of the statutes have remained substantially the same since their original enactment in 1825." *Schriro*, 914 S.W.2d at 59. The current version of section 529.060 has remained unchanged since it was enacted in 1939.

17