Gary D. Witt, Judge
The elected Collector of Revenue of Clay County, Missouri (the "Collector") appeals the judgment of the Circuit Court of Clay County granting a writ of mandamus against the Collector in favor of the Missouri Clean Energy District ("MCED"). The Collector raises four allegations of error on appeal. We affirm.
Background
The General Assembly enacted the Property Assessment Clean Energy ("PACE") Act in 2010 to allow homeowners and businesses to access financing for energy efficiency and renewable energy property improvements. The MCED is the political subdivision of the State of Missouri responsible for administering the PACE Act. Property owners obtain PACE financing by entering into "assessment contracts" with MCED. In exchange for the financing, parties agree to pay annual special property assessments pursuant to the assessment contracts. By the terms of the PACE Act, the special assessments agreed to under the terms of the assessment contract "shall be a lien on the property against which it is assessed on behalf of the" MCED. Section 67.2815.5.[1] "Such special assessments shall be collected by the county collector in the same manner *477 and with the same priority as ad valorem real property taxes." Id.
In 2013, the City of Kansas City agreed to participate in the Missouri Clean Energy District and allow residents of the city to take advantage of PACE financing. A portion of Kansas City is located within Clay County. Between November 2016, and January 2017, MCED entered into assessment contracts with seven Clay County property owners. The seven contracts were recorded in the Clay County Recorder of Deed's office.
Beginning June 2016, MCED contacted the Collector to determine what type of information she would prefer to receive to ensure the PACE assessments were properly collected. In response, the Collector refused to collect such assessments for various reasons including, her belief that the statutory provision for the collection of the assessments under the PACE Act appeared to be in conflict with other Missouri statutes regarding the collection of ad valorem taxes and that MCED and Clay County did not have an intergovernmental agreement. The Collector advised that MCED needed to seek a legislative solution to her objections to the provision of the PACE Act. On August 17, 2017, the Collector notified MCED that the PACE assessments would not be placed on the 2017 tax bills because there was no existing intergovernmental agreement. On August 24, 2017, MCED delivered a spreadsheet to the Collector with parcel numbers and the assessment amounts of the seven Clay County properties with PACE assessments for 2017.
On August 28, 2017, MCED representatives met with the Collector in person regarding collecting the PACE assessments and, according to the testimony of John Harris, Director of Finance for the MCED, the Collector stated that she would attempt to place the assessments on the 2017 tax bills. On September 1, 2017, however, the Collector wrote a letter to MCED that stated that although she had "indicated a willingness to attempt placement of certain MCED assessments on real property tax bills in Clay County in 2017" she had not previously been able to review the bills or recorded contracts. Upon her review of those documents, she believed that the PACE Act financing was inequitable and, because of this and other problems she perceived with the PACE Act, she would not place the assessments on the tax bills. She determined that she would not place the assessments on the property unless a circuit court order required her to do so.
On September 7, 2017, the MCED filed its Petition for Writ of Mandamus against the Collector ("Petition"). The Petition requested both a preliminary order in mandamus and a permanent writ of mandamus ordering the Collector to deliver tax bills that include the PACE special assessments for the year 2017. The parties and the circuit court agreed to hear the case on an expedited basis and a date for the hearing was set by agreement. The Collector filed her Suggestions in Opposition to a Preliminary Writ on September 14, 2017. MCED filed reply suggestions in support of the writ on September 15, 2017. The circuit court held a hearing on the Petition ("Hearing") on September 18, 2017. At the Hearing, the Collector again cited various objections to the PACE agreements including that they were a violation of other existing Missouri statutes and there was no intergovernmental agreement in place. She did, however, agree that MCED had delivered at least four drafts or pro-forma intergovernmental agreements to the Collector but the Collector believed they did not address her "global" concerns. Both parties presented witnesses at the Hearing and offered documentary evidence in support *478 of their respective positions. At the close of the Hearing, the circuit court requested post-hearing briefs from each party to be filed by September 20, 2017. The Collector agreed that time was of the essence because the deadline for the County to set their levies was September 20th and she would begin preparing the tax assessment bills the week following the Hearing.
The circuit court issued its judgment on September 26, 2017, granting MCED's request for a writ, issuing a permanent writ of mandamus ordering the Collector to include the PACE assessments on the 2017 tax bills ("Judgment"). The circuit court concluded that the Collector had no rights or duties to review the PACE assessment contracts and instead had a ministerial duty to place the assessments on the respective tax bills. Further, the circuit court noted that time was of the essence and found that the Collector had already been "given a full opportunity to respond to the Petition," and thus issued a permanent writ rather than simply a preliminary writ.
The Collector filed a Motion for Reconsideration on September 29, 2017, arguing, in part, (1) that the circuit court was required to issue a preliminary order allowing for an answer prior to issuing a permanent writ, (2) that the Collector should have been allowed to plead additional defenses based on certain federal and state consumer protection laws, and (3) that, when the Petition was filed, MCED had not yet delivered the PACE assessment contracts to the Collector as required by statute. Following a response from MCED, the circuit court held a hearing on the motion to reconsider. The circuit court orally found that the original suggestions in opposition to MCED's petition filed by the Collector were "tantamount to an answer [and] had the effect of an answer in the Court's opinion." Further, that the Hearing held was a "full-blown evidentiary hearing" at which both sides had full opportunity to present witnesses and exhibits. The Collector's arguments all went toward the fairness of the PACE Act and the resulting assessments as they relate to the property owners. The circuit court noted that the Collector lacked standing to raise arguments on behalf of the property owners and had failed to raise any arguments as to what additional evidence or defenses she would adduce at an additional Hearing regarding her ministerial duty to add these assessments to the property tax bills. Therefore, the circuit court denied the Collector's Motion for Reconsideration and the Collector timely filed this appeal of the Judgment.
Standard of Review
"Mandamus is appropriate when seeking to require an official to perform a ministerial act." Burnett v. Kansas City Sch. Bd., 237 S.W.3d 237, 238 (Mo. App. W.D. 2007) (citing State ex rel. Mo. Growth Ass'n v. State Tax Comm'n, 998 S.W.2d 786, 788 (Mo. banc 1999) ). "This court reviews the grant of a writ of mandamus under an abuse of discretion standard." Burnett, 237 S.W.3d at 238. "Under [that] standard, we will reverse the trial court's ruling only if it is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration." Id. at 238-39 (internal quotations omitted). "We will not find an abuse of discretion if reasonable people might differ about the propriety of the trial court's decision." Id. at 239. "Matters of statutory interpretation are reviewed de novo ." Id. (citing State ex rel. Wolfrum v. Wiesman , 225 S.W.3d 409, 411 (Mo. banc 2007) ).
State ex rel. Scherschel v. City of Kansas City , 470 S.W.3d 391, 397 (Mo. App. W.D. 2015).
*479 I.
In her first point on appeal, the Collector alleges that the circuit court erred in issuing a permanent writ because the proper procedure was not followed in the writ proceedings. Specifically, the Collector contends that the circuit court was required to issue a preliminary writ prior to making a determination if a permanent writ should be issued. She argues, the procedure followed by the circuit court did not allow the Collector to properly answer the Petition filed by the MCED.
The Supreme Court has made clear that "the ... practice of issuing a summons in lieu of a preliminary writ is not authorized by Rule 94. Writs are extraordinary remedies, and their procedures differ from normal civil actions.... The practice of issuing a summons rather than a preliminary order fails to acknowledge the nature of the remedy." U.S. Dep't of Veterans Affairs v. Boresi , 396 S.W.3d 356, 359 n.1 (Mo. banc 2013). The Court in Boresi , found that it was in "its discretion to consider the matter on the merits and issue the writ because the parties, who already have litigated the matter fully, were not at fault and should not be required to initiate a new writ proceeding due to the circuit court's failure to follow the procedure proscribed by the rules." Id. The Court noted, however, "[t]his Court is not required to exercise its discretion in like manner in the future." Id.
As the Collector notes, the Court declined to exercise its discretion in Bartlett v. Missouri Department of Insurance , 528 S.W.3d 911 (Mo. banc 2017). The Court found that, in Bartlett , the plaintiff told the clerk to issue a summons rather than treat the matter as a writ and repeatedly declined to follow the procedure applicable to writs despite numerous motions by the State requesting the court order the plaintiff to follow the proper procedure. Id. at 912. It was the plaintiffs own actions that caused the procedural misstep. But, where "the parties have litigated [the] case as if the circuit court had issued a preliminary order in mandamus" the Court has exercised its discretion to review the merits. State ex rel. Tivol Plaza, Inc. v. Mo. Comm'n on Human Rights , 527 S.W.3d 837, 842 (Mo. banc 2017). "The usual procedure in a mandamus case is for the petition to be filed, the court to determine whether an alternative writ should issue, denial of the alternative writ or issuance of same, and answer to the alternative writ if issued.... It is the alternative writ, and not the petition, therefore, to which a respondent makes his return." State ex rel. Schaefer v. Cleveland , 847 S.W.2d 867, 869 (Mo. App. E.D. 1992). "Where, however, the respondent appears without service of an alternative writ, and makes his return, the petition stands as and for the alternative writ itself for the purpose of the case and the return." Id. at 870.
In this case, when it filed its Petition for the writ, MCED filed a form for the circuit court to issue a "Preliminary Order In Mandamus" with the Petition. The record is devoid of explanation for why the circuit clerk issued a summons rather than waiting for the circuit court to issue or deny the preliminary writ based upon the allegations in the Petition. What is clear is that, upon review of the Petition, the circuit court made the determination that the case should be set for an expedited hearing. The Collector immediately entered her appearance and filed "Suggestions in Opposition to Issuance of Preliminary Writ" to the Petition on September 14, 2017.
All parties at the Hearing discussed a "preliminary writ." Counsel for Collector stated: "Your Honor, as one additional preliminary matter, I believe that the issue *480 before the Court today is whether or not to issue a preliminary order of mandamus." The Judge replied, "Yes." Then Counsel for the Collector argued that she was not sure that witnesses and evidence was "appropriate to support the preliminary order." MCED replied: "I believe it's in the Court's discretion to hear evidence. I believe it's within our discretion to present it, present a full record for the Court to evaluate the status, and we intend to put two brief witnesses on." The circuit court stated: "All right. Well, I'll give it what weight I believe it deserves as far as the preliminary writ goes. I'll allow it." Both parties called witnesses and presented documentary evidence at the Hearing. At the end of the Hearing the circuit court stated: "I've detected that time is of the essence, so what is the hard line time limit in order for this to happen one way or the other?" The Collector responded that she would begin assembling the tax bills the following week. The circuit court then requested counsel to file further legal briefs regarding the issues presented during the Hearing.
We agree that the circuit court did not follow the proper procedure. We disagree, however, that this constitutes reversible error. As the circuit court found, the Collector had a full opportunity to answer the Petition, appear at the Hearing, present evidence including live witnesses and cross-examine MCED's witnesses. The circuit court again considered this issue during a hearing on the Collector's motion to reconsider its issuance of a permanent writ, finding that the parties each had a full and fair opportunity to be heard. Although statements were initially made at the Hearing regarding a preliminary writ, it became clear to the circuit court that, by the end of the Hearing, a final writ would need to be issued within a week based on the Collector's own time constraints. When objecting to this procedure, the Collector failed to provide the circuit court with what relevant evidence she would have adduced at an additional hearing.
The Collector argues on appeal that, had she known that she would not get a second hearing, she would have presented additional affirmative defenses in her Suggestions in Opposition. Such defenses are not, however identified or discussed. Nor does the Collector identify any additional evidence or testimony she was prevented from presenting at the Hearing because she was unaware the circuit court was considering a permanent writ. At oral argument, the Collector again merely identified issues that had been raised at the Hearing, citing only a need to further develop such arguments.
"No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b). In other words, reversal requires prejudicial error. Ivie v. Smith , 439 S.W.3d 189, 199 (Mo. banc 2014). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." State ex rel. Scherschel , 470 S.W.3d at 399.
The Collector has not identified anything that would have been done differently had the evidentiary Hearing been in support of a permanent writ as opposed to a preliminary writ. The transcript of the Hearing makes clear that following the testimony, the circuit court was made aware by the Collector herself that events were such that the circuit court would need to decide whether to issue a permanent writ within one week. If the Collector was aware of any additional defenses or arguments it believed needed to be presented to the circuit court prior to the *481 issuance of the permanent writ, it should have raised those at the Hearing or at the latest in its post-hearing briefing. The Collector should have made it clear to the circuit court that it desired to bring such claims and believed an additional hearing was necessary. See Bartlett , 528 S.W.3d at 912 (respondent "objected to the treatment of the proceedings as a normal civil action, repeatedly noted the procedural deficiencies" and the circuit court treated the case as a "normal civil action until the very end.") When the Collector raised this argument to the circuit court in her Motion to Reconsider, the circuit court granted the parties a hearing, ultimately finding no indication that there would have been a different outcome had a preliminary writ been issued prior to the Hearing. Instead, the circuit court found that the Collector had every opportunity to be heard as she would have if a preliminary writ had been issued instead of a summons.
While the circuit court erred procedurally by issuing a summons rather than a preliminary writ, the Collector was not prejudiced by this action. She was given full opportunity to answer the Petition and participate in the Hearing on the merits of the writ. The Collector relies on the cases of Bartlett and Boresi to support her position. However the courts in those cases were addressing a different procedural posture than presented in the case currently before us. In Bartlett and Boresi the lower courts denied the writ refusing to grant the relief requested, so each case was not technically procedurally subject to direct appeal. Bartlett , 528 S.W.3d at 913. "If the court does not grant a preliminary order, the petitioning party then must file its writ petition in the next higher court." Id. (quoting State ex rel. Ashby Rd. Partners v. State Tax Comm'n , 297 S.W.3d 80, 83 (Mo. banc 2009) ). There is no appeal from the trial court's denial of a preliminary writ of mandamus. Id. However, where a lower court has issued a preliminary writ but denies the permanent writ by quashing the preliminary writ after an evidentiary hearing, the parties may seek review through appeal. Id. When it is the denial of the writ at issue the lack of a ruling on a preliminary writ confuses the administration of future proceedings on the case. No such confusion exists when, as is the case before us, the circuit court granted the writ petition after a full hearing on the merits. When a permanent writ is granted after a hearing on the merits, the aggrieved party may seek review through appeal. See Friends of Responsible Agric. v. Bennett, 542 S.W.3d 345, 349 (Mo. App. W.D. 2017). Based on the expedited timeline necessitated by the Collector herself, coupled with the full nature of the Hearing provided to the parties, the circuit court did not commit reversible error when it issued a permanent writ rather than issuing a preliminary writ followed by additional proceedings. Point denied.
II.
The Collector's second point on appeal alleges that the circuit court erred in granting the Writ because there was insufficient evidence to demonstrate that the preconditions for the collection of the PACE assessments had been met. Specifically, under section 67.2815.4, MCED was required to provide a copy of the signed assessment contracts to the county assessor and the Collector and, by the time of the Hearing on September 18, there was no evidence that such requirement had been met.
Section 67.2815.4 states that: "[t]he clean energy development board shall provide a copy of each signed assessment contract to the local county assessor and county collector and shall cause a copy of such assessment contract to be recorded in *482 the real estate records of the county recorder of deeds." The Collector alleges that there is no evidence that the contracts were delivered until, on September 25, 2017, the MCED filed a "Certificate of Service of Assessment" stating that the contracts were delivered. She argues, such a failure should have been grounds upon which to deny both the Petition and any preliminary writ because under the terms of the contract, the assessment is not a lien on the subject property until the contract is delivered to both the assessor and collector.[2]
MCED notes that there was sufficient evidence upon which the circuit court could, and did, find that the contracts had been delivered prior to filing the Petition. The circuit court found that "[o]n September 1, 2017, the Collector informed MCED by letter that although she had taken the opportunity to review the recorded assessment contracts, she would not include the requested amounts on the corresponding real property tax statements...." It also found that "[t]he parcel ID numbers and assessment amounts in the spreadsheet (Ex 3) match the parcel ID numbers and assessment amounts on each of the PACE assessment liens that were delivered to the Collector in open court at trial and admitted into evidence." "[W]e defer to the trial court's factual findings so long as they are supported by competent, substantial evidence, but will review de novo the application of the law to those facts." State ex rel. Winkler v. Goldman , 485 S.W.3d 783, 789 (Mo. App. E.D. 2016). The September 1, 2017 letter from the Collector to MCED formed sufficient factual basis for the circuit court's finding that the contracts were, in fact, delivered to the Collector prior to September 1, 2017. Additionally, the Hearing record establishes the contracts were again delivered in open court on September 18, 2017. The Collector's assertion that the delivery of the contracts was not made until September 25, 2018, is contrary to the sound factual findings of the circuit court to which we must defer. It is not lost on this Court that the Collector's Point III challenges the circuit court's judgment because the contracts (which the Collector argues in this Point that she did not receive) are in conflict with the statutes. Under the findings of the circuit court, MCED had met its statutory requirements at the time the circuit court ordered the Collector to place the PACE assessments on the tax bills. Thus, there is no factual basis for the Collector's second allegation of error. We find that the circuit court did not err in granting the writ despite the Collector's erroneous contention that it had not received the full PACE assessment contracts. Point denied.
III.
The Collector's third point on appeal alleges that the circuit court erred in issuing the Writ because the language of the MCED contracts are inconsistent with the state statutes regarding the collection of property taxes, that a writ of mandamus is not an appropriate remedy because the collection of these assessments involves matters of discretion on the part of the Collector, and that a writ of mandamus is not an appropriate remedy for a discretionary act and because the MCED had other remedies for the collection of the amounts in question.
*483 As MCED notes, Point Relied On III is multifarious in that it presents distinct claims of error that should be asserted in separate points relied on. See State v. Robinson , 454 S.W.3d 428, 437 n.6 (Mo. App. W.D. 2015). In fact, it presents sixteen separate claims of error within one point on appeal. In general, multifarious points preserve nothing for appellate review and are subject to dismissal. However, because we prefer to decide cases on the merits where appellant's argument is readily understandable-as is the case here-we have elected to exercise our discretion to review the merits of the arguments set forth in the points relied on to the extent possible.
The Collector argues that the contract language of the PACE assessment contracts between MCED and the property owners are inconsistent with state statutes regarding the collection of other types of property taxes. Specifically, the Collector raises thirteen allegations of error in lettered subparts to Point Relied On III. The Collector does not present arguments as to how each of these subparts are applicable to this matter but merely asserts that "[t]he language that MCED itself drafted and imposes in its contracts makes them inconsistent with collection on the property tax bill." We find we do not need to restate all of the alleged inconsistencies because such allegations are immaterial to the ultimate findings of this Court.
Section 67.2815.5 provides that PACE assessments "shall be collected by the county collector in the same manner and with the same priority as ad valorem real property taxes." (emphasis added). "Generally, the legislature's use of the word 'shall' removes any discretion from the official who is directed to perform the specified act." State ex rel. Hunter v. Lippold , 142 S.W.3d 241, 245 (Mo. App. W.D. 2004). "The word 'shall' is usually used to express compulsion, obligation or necessity, ... and, therefore, it generally mandates an action." Id.
The PACE Act does not grant to the county collector any power or authority to review and interpret the assessment contracts to determine if she believes contractual terms are inconsistent with the statutes. The collectors are merely tasked with the ministerial function to place the assessment amount contracted for on the county property tax bill. The challenges raised by the Collector relate to rights and obligations between the property owners and the MCED. The only way that she would have an "interest" in what she alleges to be inconsistencies are if the act of placing the amounts on the tax bill were discretionary. "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." Southers v. City of Farmington , 263 S.W.3d 603, 610 (Mo. banc 2008). "A ministerial function, in contrast, is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his [or her] own judgment or opinion concerning the propriety of the act to be performed.' " Id.
When an official is directed by statute that he or she "shall" take an action, such as to collect a charge, it is a ministerial function. City of Slater v. State , 494 S.W.3d 580, 589 (Mo. App. W.D. 2016). In City of Slater , court clerks responsible for collecting court costs were directed that he or she "shall collect and disburse such amounts as provided by section 488.010 to 488.020...." Id. at 583-84. This Court held that the officials' duty to collect the surcharge under the statute was ministerial. Id. at 584.
This case is dissimilar to that of *484 Bethman v. Faith , 462 S.W.3d 895 (Mo. App. E.D. 2015), relied on by the Collector. In Bethman , taxpayers sought a writ of mandamus to compel the collection of a municipal license tax from all "restaurants." Id. at 899. The Court held that the collector had discretion to determine whether the tax applied to a particular entity by determining whether it was "engaged in the business of a restaurant" and thus should have the tax applied. Id. at 905. Such is not the case here. The Collector is given the specific parcel number to which the assessment is applied. There is no ambiguity over which the Collector can or needs to exercise discretion. The fact that the statute requires the contracts to be delivered to the Collector does not lead to the inference that the Collector may then review the contracts and exercise her discretion as to whether they should or could be enforced. The delivery of the contract merely allows for the placement of the assessment amounts on the tax bill. Had the legislature intended any discretionary function by the Collector it would have provided the Collector such authority.
Because the Collector is given no discretion in determining whether to place the PACE assessments on the tax rolls, we need not address the alleged inconsistencies or deficiencies in the PACE assessments. The Collector had no right or duty to review such assessments nor had she the right to refuse to place the assessments on the tax roll if she believed such issues existed. Thus, we need not address the legitimacy of such claims. If the property owner wishes to challenge assessment of these amounts or the contractual provision authorizing them, it is the property owner, not the Collector who needs to bring that challenge.
The Collector also argues within Point Relied On III that a writ of Mandamus was not the proper remedy for the collection of the PACE assessments because MCED had other remedies to recover the amounts due under the contracts. "A writ of mandamus is meant to 'compel a public official to do that which he or she is obligated by law to do and undo that which he or she was prohibited by law from doing.' " State ex rel. Yoest v. McEvoy , 529 S.W.3d 383, 385 (Mo. App. W.D. 2017) (quoting State ex rel. Thomas v. Neeley , 128 S.W.3d 920, 924 (Mo. App. S.D. 2004) ). The Missouri Supreme Court had made clear that a writ is an appropriate remedy to require a county collector to include a collection on a tax bill. State ex rel. Bd. of Health Ctr. Tr. of Clay Cty. v. Cty. Comm'n of Clay Cty. , 896 S.W.2d 627, 631 (Mo. banc 1995). In State ex rel. Board of Health the Clay County Board of Health Center Trustees issued a tax levy increase but the Clay County Commission refused to certify the levy for collection and inclusion on the tax bills. Id. at 629. The Supreme Court affirmed, in part, the trial court's grant of a writ mandating the Clay County Commission to authenticate the increased tax levy. Id. at 630. The Court noted in that case:
[t]he Commission's role for independent taxing authorities such as the Board is the ministerial duty of accumulating the levies assessed by such political subdivisions and certifying them to the collector for inclusion on the tax bills. Its role is not to act as a judge of the constitutionality of the tax.
Id. at 631.
Further, it is immaterial that the PACE assessment contracts may give to the MCED a right to otherwise collect the contracted for amounts due. The PACE Act, as passed by the legislature, establishes the county collectors as a proper collection method. We agree that a writ of mandamus "ought to be reserved for those cases in which no alternative measure will be effective." State ex rel. Kelley v. Mitchell , 595 S.W.2d 261, 266 (Mo. banc 1980).
*485 But such is not the case here. There is no alternative measure by which MCED may force the Collector to place the PACE assessments on the tax bills, as required by law. The Collector cannot shirk the responsibility the legislature mandated for county collectors to collect PACE assessments by arguing that the MCED may have another legal remedy for the collection of funds. As with State ex rel. Board of Health , the writ of mandamus is the proper remedy to which the MCED is entitled. Point denied.
IV.
The Collector's final point on appeal alleges that the circuit court erred in finding that the Collector was unwilling to enter into a collection agreement with MCED, arguing that had the circuit court not made this finding, it would not have issued the writ. We find this argument to be without merit.
As the MCED notes, the circuit court did not make such a finding. The Collector provides no reference to anywhere in the record where the circuit court made such a finding. Instead, MCED points to a contrary finding in the circuit court's judgment which acknowledged that the Collector had "expressed concerns that no 'intergovernmental agreement' had been reached between MCED and her office" and that both parties had spent "considerable time and effort negotiating the matter." The circuit court specifically noted that it "wholeheartedly agree[d] with the Collector than an intergovernmental agreement between her office and MCED would be both prudent and useful" but "the Court also concurs with MCED that the law simply does not require that any such agreement be in place prior to the collection of PACE special assessments."
Given the lack of citation to the record,[3] it is unclear what finding the Collector wishes to challenge. We agree with the MCED, it appears that the circuit court correctly found that although the parties attempted to negotiate an intergovernmental agreement, they were unsuccessful. No blame for the lack of success is assigned by the circuit court which found that it was ultimately immaterial because such an agreement was not required. The Collector does not challenge this finding. Further, the Collector presents no legal support for its contention that an intergovernmental agreement is necessary prior to placing the assessments on the tax bills. Thus, even had the circuit court made a finding that the Collector was to blame for the lack of an intergovernmental agreement, and this Court were to find that such a finding was erroneous, it would be immaterial to our holding because the fact that no agreement was necessary is unchallenged. Section 52.320.2 states that the "collector of revenue may enter into a contract with a city providing for the collection of municipal taxes by the collector." (emphasis added). There is no authority cited by the Collector which would change the voluntary nature of this requirement.
Point denied.
Conclusion
For the reasons stated above, we affirm.
All concur

All statutory citations are to RSMo 2016 as currently updated, unless otherwise noted.

No citation is given to the contractual provision setting forth this requirement. Although section 67.2815.4 does direct the MCED to record a copy of the contract with the county recorder of deeds, it makes no statement as to the validity of a lien prior to the filing in county records. Further, it is not disputed that the contracts were, in fact, properly filed with the county recorder of deeds.

MCED argued that the Collector's brief should be stricken because it failed to properly cite to the record. In response, the Collector argues: "While citations to the record can be critical, there is no requirement that every detail and unrefuted fact be annotated." We direct the Collector to rule 84.04(c). Citation to the record is, in fact, both critical-as illustrated here-and required.